Court of Appeals Docket No. 25-3978

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

MARY BLEICK; TODD BUTLER; ALLEN SKIERSKI;
GARY PETRIME

*Plaintiffs - Appellants*,

v.

SHERYL MAXFIELD; SUPERINTENDENT AKIL HARDY; ROBERT
SPRAGUE; JOY BLEDSOE,

*Defendants - Appellees.*

Appeal from the United States District Court for the
Southern District of Ohio, Eastern Division, 2:25-cv-01140-EAS-EPD,
The Honorable Judge Edmund A. Sargus

**APPELLANTS' EMERGENCY MOTION FOR STAY OF
TEMPORARY  PENDING APPEAL**

**Relief is needed by tomorrow, when the permanent transfer of $1.7 Billion in private trust funds is scheduled to begin without notice to specific named citizens at midnight (tomorrow) on December 31, 2025. (A state court has issued a TRO through January 8, 2026, on different state law grounds.)**

*Attorneys for Plaintiffs-Appellants*

Jeffrey A. Crossman
Marc E. Dann
Andrew M. Engel
Brian Flick
DannLaw
15000 Madison Avenue
Lakewood, OH 44107
Telephone: (216) 373-0539
Email:  notices@dannlaw.com

William W. Palmer
Palmer Law Group, a PLC
907 Westwood Boulevard, No. 218
Los Angeles, CA 90024
Telephone: (310) 984-5074
Facsimile:  (310) 491-0919
Email:  wpalmer@palmercorp.com

1

## CONFLICT DISCLOSURE STATEMENT

Plaintiffs-Appellants Mary Bleick, Todd Butler, Allen Skierski, and Gary Petrime (collectively, "Appellants") are residents of the State of Ohio with known and unknown ownership interests in the trust fund maintained as the Unclaimed Funds Trust Fund ("UFTF"), codified under the Ohio Revised Code Chapter 169, *et seq*.

Appellees-Defendants Sheryl Maxfield, in her official capacity as Director of Commerce at the Department of Commerce of the State of Ohio, Akil Hardy, in his official capacity as the Superintendent of the Ohio Division of the Unclaimed Funds, Robert Sprague, in his official capacity as Treasurer of the State of Ohio, and Joy Bledose, in her official capacity as Executive Director of the Ohio Facilities Construction Commission (collectively, "Appellees") are State officials charged with administering Ohio's Unclaimed Funds Trust Account pursuant to Ohio Revised Code Chapter 169, *et seq*., and its recent amendment, House Bill 96. Appellee intends to execute the transfer of title to the $1.7 Billion worth of property, without notice to the property owners, upon the expiration of a state court granted temporary restraining order at midnight on December 31, 2026, if an injunction does not issue pursuant to FRAP Rule 8(a)(2).

# TABLE OF CONTENTS

STATEMENT OF THE CASE..........................................................................5

STATEMENT OF THE FACTS....................................................................6

STATUTORY BACKDROUND..................................................................8

A.    Ohio's Pre-H.B. 96 Unclaimed Funds Act ........................................8

B.    H.B. 96's Amendment Of The Unclaimed Funds Act...................................11

ARGUMENT ................................................................................13

    1.    Appellants Have Established A likelihood of Success on The Merits ..........................................................................15

    2.    Appellants' Unclaimed Funds Are Property Protected by The Due Process Clause.....................................................15

    3.    Appellants Will Lose Title  to Their Property on January 1, 2026 .....16

    4.    The State Concedes it Does Not And Will Not Provide Any Notice Prior to Permanently Acquiring Title ..................................17

    5.    Appellants Face Irreparable Harm Should The Injunction Not Issue ..........................................................................17

    6.    The Balance of Equities And Public Interest Favors Injunctive Relief ..........................................................................19

CONCLUSION ................................................................................20

CERTIFICATE OF COMPLIANCE ....................................................22

CERTIFICATE OF SERVICE ............................................................23

TO THE HONORABLE UNITED STATES COURT OF APPEALS:

Pursuant to Rules 27 and 8(a)(2) of the Federal Rules of Appellate Procedure, Movants/Appellants Mary Bleick, Todd Butler, Allen Skierski, and Gary Petrime (collectively, "Appellants") respectfully seek the entry of a preliminary injunction on an emergency basis pending resolution of their appeal of the December 9, 2025 Order of the U.S. District Court for the Southern District of Ohio, which acknowledged the unnoticed seizure but denied injunctive relief.

Absent emergency relief from this Court, Appellants therefore face the imminent transfer of title to their property held in trust by the State on January 1, 2026 [1], which will cause irreparable harm and undermine this Court's jurisdiction to consider the merits of this appeal. Appellants therefore request this Court to enjoin Appellees Sheryl Maxfield, in her official capacity as Director of Commerce at the Department of Commerce of the State of Ohio, Akil Hardy, in his official capacity as the Superintendent of the Ohio Division of the Unclaimed Funds, Robert Sprague, in his official capacity as Treasurer of the State of Ohio, and Joy Bledose, in her official capacity as Executive Director of the Ohio Facilities Construction from reclassification, certification, transfer, diversion, liquidation or other expenditure of between $1.7-$1.9 Billion of the Unclaimed Funds Trust Fund ("UFTF") while this appeal is pending.

_____

[1] Or on January 8, 2026 if the Preliminary Injunction is not granted.

## STATEMENT OF THE CASE

Appellants appeal from the district court's denial of their motion for a preliminary injunction. Opinion and Order, R. 44, Page ID # 459-81. The district court decision was based on a factual record composed of party declarations, stipulations, and testimony adduced at an evidentiary hearing.

In its Opinion and Order, the district court found that Appellants could not establish irreparable harm because the payment of just compensation is always available for governmental takings, under this property seizure program.   Opinion and Order, R. 44, Page ID # 477-79.  The district court further concluded that the Supreme Court's decision in *Knick*, 588 U.S. 180, *supra*, prohibited the grant of prospective equitable relief in takings cases. Opinion and Order, R. 44, Page ID # 479.

The district court then refused to consider Appellants' Due Process claim, holding that injunctive relief under that claim was also barred by *Knick*. "Plaintiffs may not use their Due Process Clause claim to circumvent the Supreme Court's reasoning in *Knick* and obtain an injunction when they have an adequate remedy at law to recover those unclaimed funds." Opinion and Order, R. 44, Page ID # 479-80. This impractical conclusion will result in the transfer of title to the yet unclaimed property, despite the State's acknowledgment that they have not directly notified

property owners of their ability to reclaim their property before the State acquires title ownership over the property by fiat

## STATEMENT OF THE FACTS

Each Appellant owns funds within Ohio's Unclaimed Funds Trust Fund. Stipulations of Fact, R. 42, Page ID # 455; Plaintiffs' Motion for Preliminary Injunction, Declaration of Gary Petrime, R. 20-3, Page ID # 294, Declaration of Mary Bleick, R. 20-4, Page ID # 301, Declaration of Todd Butler, R. 20-5, Page ID # 307. And each owns other assets in the State that are subject to reporting as "unclaimed" and potential future seizure by the State. Declaration of Gary Petrime, R. 20-3, Page ID # 296-97, Declaration of Mary Bleick, R. 20-4, Page ID # 304, Declaration of Todd Butler, R. 20-5, Page ID # 310.

Appellant Gary Petrime has been trying to claim his funds for over 10 years. However, a misspelling in his name, presumably by the holder that reported the funds as unclaimed, has prevented him from recovering those funds through the UFTF's claims process. Declaration of Gary Petrime, R. 20-3, Page ID # 294.

At the December 8, 2025, hearing on Appellants' Motion for Preliminary Injunction testimony, was elicited from Amy Schellhammer, the finance manager for the Division of Unclaimed Funds. Hearing Transcript, R. 45, Page ID # 485.

Ms. Schellhammer testified that the State does not send postcards or letters or even emails to owners of unclaimed funds before their property is seized and sold

and/or funds are deposited with the State.  Hearing Transcript, R. 45, Page ID # 488-89.  Ms. Schellhammer also testified that the landing page for the State's unclaimed funds website does not include any information about the January 1, 2026 transfer of ownership to the State.  Hearing Transcript, R. 45, Page ID # 490.  Neither does the website contain any information regarding why the Unclaimed Funds Act was amended to affect that transfer.  *Id*.

During closing arguments, Appellees' counsel expressly argued that the H.B. 96 amendments do not require the posting of a warning on the unclaimed funds website about the January 1, 2026, transfer of ownership. She further argued that the "passage of House Bill 96 is sufficient notice" to Ohioans.   Hearing Transcript, R. 45, Page ID # 668.  She concluded, "We're not required to do anything more."  *Id*., at Page ID # 669.

The parties and the Court agreed that $600 million of the money that permanently escheats to the State on January 1, 2026, will be used for a privately owned football stadium for the Cleveland Browns, or, as Appellees prefer to call it, "transformational multi-use sports facility."  Hearing Transcript, R. 45, Page ID # 467.

7

## THE STATUTORY BACKGROUND

This case involves recent amendments to and the ongoing application of Ohio's Unclaimed Funds Act, O.R.C. Chapter 169. The amendments, enacted through H.B. 96 on June 30, 2025, drastically changed the legal framework of Ohio's unclaimed funds system. Therefore, a review of the old version of the law is needed to fully understand the effect the amendments had on the system.

### A.    Ohio's Pre-H.B. 96 Unclaimed Funds Act

Like most states, Ohio has enacted law to safeguard private property that may seem to have been forgotten by its owners. This property, held by banks, credit unions, insurance companies, investment brokerages, and the like, becomes subject to transfer to the State's Unclaimed Funds Trust Fund ("UFTF") if the property owner conducts no transactions regarding the property for a period of time typically one to five years, based on the property type. O.R.C. 169.02.

In such situations, the holder of the property, e.g. the bank where a deposit account is located, must report the inactivity to Ohio's Director of Commerce. O.R.C. 169.03.  Prior to making the report, the holder of the funds must mail a notice to the "last known address of the owner as shown by the records of the holder." O.R.C. 169.03. However, this mailing is required only for property valued at greater than $50. And the requirement is waived if the holder cannot confirm the address it has is accurate.  *Id.*  Regardless of whether the holder attempts notice, all funds not

otherwise claimed or "reactivated" by the property owner are paid into the UFTF with the annual report. Testimonies confirmed that Appellees provide no prior notice either direct mail or publication before taking title to the private property.

This private property includes stocks, contents of safe deposit boxes, pensions, life insurance policies, savings accounts, etc. Appellees return only the salvage value on proceeds from the sale of the property, which is admittedly not "just compensation."

The UFTF is a custodial trust established under O.R.C 169.05 to safeguard private property until its rightful owner is located and claims it. This feature makes Ohio's unclaimed property statute different from "abandoned property" statutes found in some states. Under Ohio law, these funds "are not abandoned; they are the property of their owner." *Sogg v. Zurz*, 121 Ohio St.3d 449, 453 (2009). And there is nothing in the Act to suggest the "General Assembly intended to treat unclaimed funds as if they had been abandoned, forfeited, or escheated." *Id*., at 451. Thus, although the property is transferred to the State, the Director holds the property in trust until claimed by the owner or the owner's successor in interest. Ohio Rev. Code Ann, § 169.05.

Once the property is seized by the State and placed in the UFTF, O.R.C. Chapter 169 places almost no notice requirement on the State. The only notice the State is required to provide is post-seizure publication notice.

(A) Before the first day of November of each year immediately following the calendar year in which the filing of reports is required by section 169.03 of the Revised Code, the director of commerce shall cause notice to be published once in an English language newspaper of general circulation in the county in this state in which is located the last known address of any person to be named in the notice required by this section. The notice may be published in print or electronic format. If no address is listed, the notice shall be published in the county in which the holder of the unclaimed funds has its principal place of business within this state; or if the holder has no principal place of business within this state, publication shall be made as the director determines most effective. If the address is outside this state, notice shall be published in a newspaper of general circulation in the county or parish of any state in the United States in which such last known address is located. If the last known address is in a foreign country, publication shall be made as the director determines most effective.

O.R.C. 169.06(A).

However, this published notice occurs <u>after</u> the taking and does not include the names of all persons identified as having money in the trust fund. Subsection (B) of the statute limits the publication requirement to those individuals whose unclaimed property is valued at greater than $50. O.R.C 169.06(B)(1). This is significant because approximately 60%-70% of all monies in the UFTF are amounts less than $50. Hearing Transcript, R. 45, Page ID # 542-43 (Testimony of Jan Peters). Further, property, such as stocks, is taken from foreign citizens and those residing in other states, discussed *infra*.

No provision of Ohio's unclaimed funds statute requires the State to provide individualized, direct mail notice to the property owners regardless of the amount or form of property, e.g. stocks, safe deposit box contents, life insurance, etc.

10

**B.      H.B. 96's Amendment of the Unclaimed Funds Act**

H.B. 96, passed by Ohio's General Assembly on June 30, 2025, amended Chapter 169 of the Ohio Revised Code and empowered the State to confiscate a substantial portion of the monies in the UFTF to fund, among other things, a private football stadium for the Cleveland Browns in Brook Park, Ohio.  Opinion and Order, R. 44, Page ID # 462-63.

Under the H.B. 96 amendment, all monies held in the UFTF for over 10 years permanently escheats to the State on January 1, 2026. As a result, between $1.7 and $1.9 billion dollars currently held in the UFTF will become the property of the State. The operative statutory language is found in H.B. 96's enactment of O.R.C. 169.08(I), provides in relevant part:

> (I)(1) Unclaimed funds and interest earned thereon that are first reported to the director  under section 169.03 of the Revised Code on or before January 1, 2016, are deemed abandoned and escheat to the state on January 1, 2026, if no valid claim is filed by the owner or another person claiming a right to payment on or before that date.

> (2) Unclaimed funds and interest first reported to the director after January 1, 2016, are deemed abandoned and escheat to the state on the tenth anniversary of that reporting date if no valid claim is filed by the owner or another person claiming a right to payment on or before the tenth anniversary of that reporting date.

> (3)(a) All property rights, legal title to, and ownership of unclaimed funds and interest vest solely in the state on the date the unclaimed funds and interest are deemed abandoned and escheat to the state.

O.R.C. 169.08(I).

11

The statute goes on to permit an owner of property that has permanently escheated to the State to file a claim with the State for an equivalent amount, "less any expenses and costs incurred by the State in securing full title and ownership of the unclaimed funds."  O.R.C. 169.08(I)(3)(b).  In other words, the statute converts the title that property owners held in the custodial trust on December 31, 2025, into a contingent claim right on January 1, 2026. This claim right is subject to reduction for undefined "expenses and costs," and with title permanently vested in the State and a claims process managed by the State.  And going forward on the tenth anniversary of the reporting of the funds remaining in the UFTF, those funds automatically permanently escheat to the State.

As striking as H.B. 96's amendments to Chapter 169 are, the omissions from the amendments are even more remarkable. As described above, prior to the H.B. 96 amendments, the notice provisions of the Unclaimed Funds Act were non-existent, at best, extremely weak and post seizure. Appellants discovered that foreign citizens' information was falsified to addresses such as Tokyo, "Ohio, 00000," Seoul, "Ohio, 00000," Munich, "Ohio, 00000," etc.  *See* Hearing Transcript, R. 44, Page ID # 539 (Testimony of Jan Peters).  The notice requirements of the new escheatment provisions, on the other hand, are nonexistent. There are none.

The result is that when unclaimed funds are first reported to the Director of Commerce and paid into the UFTF, there is only a slim chance a property owner

12

might catch wind of it. But Ohio's General Assembly made absolutely no provision to notify any property owner that title to their property was about to be lost forever.

## ARGUMENT

To obtain a stay pending appeal pursuant to FRAP Rule 8(a), a movant must satisfy a standard that mirrors preliminary injunction, Appellants must show that (1) they are likely to succeed on the merits of their constitutional claims; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) that an injunction is in the public interest. *See Nken v. Holder*, 556 U.S. 418, 434 (2009); *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) ("*Winter*").

Although these are the same four factors considered for a preliminary injunction, the Supreme Court has made clear that a stay pending appeal is an exercise of judicial discretion designed to preserve meaningful appellate review and prevent irreparable consequences while an appeal is pending. *Nken*, 556 U.S. at 427—28. The first two factors, likelihood of success and irreparable harm, are the most critical. *Id*. at 434.

Consistent with Supreme Court precedent, the Sixth Circuit applies these factors using a flexible, sliding-scale approach. Under this framework, a movant need not always demonstrate a high probability of success on the merits; rather, "the probability of success that must be demonstrated is inversely proportional to the

amount of irreparable injury the movant will suffer absent a stay." *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153–54 (6th Cir. 1991). Thus, a stay is appropriate where the movant raises serious questions going to the merits and shows that irreparable harm decidedly outweighs any potential harm to the opposing party. *Id*

Even if the Court is not certain that an appellant is likely to succeed on the merits, a preliminary injunction is still appropriate where, as here, the appellant shows "serious questions going to the merits and irreparable harm which decidedly outweighs any potential harm to the defendant" or if "the merits present a sufficiently serious question to justify further investigation." *In re DeLorean Motor Co.*, 755 F.2d 1223, 1229-30 (6th Cir. 1985) (quotations omitted).

The first two prongs of the *Winter* factors are "gateway factors" or prerequisites to be "balance[d]" against the remaining prongs. *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017). When the State is a defendant, as in this case, the preliminary injunction factors of harm to the opposing party and public interest are combined. *See Nken v. Holder*, 556 U.S. 418, 435 (2009).

"In constitutional cases, the likelihood-of-success factor is often dispositive… If challengers show such a likelihood, they typically can establish that they will suffer an irreparable injury from the violation of their constitutional rights." *Marcum v. Comm'r Cookie Crews*, No. 25-5840, 2025 U.S. App. LEXIS 27819, * 6

14

(6th Cir. Oct. 23, 2025) (citing *L.W. ex rel. Williams v. Skrmetti*, 73 F.4th 408, 414 (6th Cir. 2023); *Vitolo v. Guzman*, 999 F.3d 353, 360 (6th Cir. 2021)). In *Vitolo*, this court reiterated that, in constitutional cases, the likelihood-of-success factor is generally the most critical, explaining that, when constitutional rights are at stake, irreparable injury is presumed, and preventing unconstitutional conduct aligns with the public interest. *Id*. at 360.

## 1.    Appellants Have Established A Likelihood of Success on The Merits

"To state their procedural due process claim, Appellants must establish three elements: (1) that they have a property interest protected by the Due Process Clause; (2) that they were deprived of this property interest; and (3) that the State did not afford them adequate pre-deprivation procedural rights." *Cahoo v. SAS Analytics Inc.*, 912 F.3d at 900, supra (citing *Chandler v. Vill. of Chagrin Falls*, 296 F. App'x at 469, *supra*).  Appellees make no secret of the fact that their property seizure program provides no constitutional Notice and  Due Process within the plain reading of *Jones v. Flowers*, 547 U.S. 220 (2006) ("*Jones*"), *Mullane v. Central Hanover Bank & Trust Co*., 339 U.S. 306, 313 (1950) ("*Mullane*"), etc.

## 2.    Appellants' Unclaimed Funds Are Private Property Protected by The Due Process Clause

"Any significant taking of property by the State is within the purview of the Due Process Clause." *Connecticut v. Doehr*, 501 U.S. 1, 12 (1991). This includes

"temporary, nonfinal" deprivations. *Fuentes v. Shevin*, 407 U.S. 67, 85 (1972); *see also*, *Garza v. Woods*, 150 F.4th 1128, 1128 (9th Cir.) ("And if notice is required, it must be 'reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Id.* (quoting *Mullane*, 339 U.S. at 314, *supra*); *see also*, *Maron v. Chief Fin. Officer of Fla*., No. 2313178, 2025 U.S. App. LEXIS 11971, at *11-12 (11th Cir. May 16, 2025) ("[t]he Fifth Amendment right to full compensation arises at the time of the taking, regardless of post-taking remedies that may be available to the property owner"). "[E]ven the temporary or partial impairments to property rights that such encumbrances entail are sufficient to merit due process protection." *Connecticut v. Doehr*, 501 U.S. at 12, *supra*.

Appellants' property interest–ownership of the funds–is undeniably a private property to which Due Process protections attach.

### 3. Appellants Will Lose Title to Their Property on January 1, 2026[2]

Each Appellant has verified that they have known property, and perhaps unknown property in the UFTF. *See* Declaration of Jan Peters (Government's website is broken and unsearchable). And each Appellants' property is subject to

---

[2] The statute requires that property held in Unclaimed Funds since January 1, 2016, will permanently escheat to the state on January 1, 2026. Notwithstanding this, a state court granted a temporary restraining order against the State on December 23, 2025, which expires on January 8, 2026.

16

confiscation by the State starting on January 1, 2026. Plaintiff Gary Petrime's property is almost certainly going to permanently escheat to the State on that date. He learned that he had property in the UFTF in 2015, prior to the January 1, 2016, date specified in O.R.C. 169.08(I). The risk of loss is not speculative or remote. It is imminent and certain. The funds will be taken and spent.

**4.    The State Concedes it Does Not And Will Not Provide Any Notice Prior to Permanently Acquiring Title**

Appellees have not argued that Chapter 169, as amended by H.B. 96, requires any notice to property owners prior to the January 1, 2026, escheatment date. In fact, at the December 8, 2025, evidentiary hearing, Appellees admitted that no direct, individualized notice will be provided to Plaintiffs prior to the taking of their property on January 1, 2026. They also admitted that the unclaimed funds website does not include any notice that UFTF funds will be escheated on January 1, 2026. In fact, at the hearing, Appellees argued that "the law doesn't require that we put that information on the website. In fact, the passage of House Bill 96 is sufficient notice… ." "We're not required to do anything more." Hearing Transcript, R. 45, Page ID # 669.

**5.    Appellants Face Irreparable Harm Should The Injunction Not Issue**

Appellants (and the general public in the state of Ohio, other states and countries) face irreparable harm both because the unnoticed seizure process is

ongoing and because they will permanently lose vested property rights and because that loss will occur without the constitutionally required pre-deprivation notice and opportunity to be heard.  A deprivation of property without Due Process is itself an irreparable constitutional injury, wholly independent of any later monetary reimbursement. "Moreover, the denial of a constitutional right [here, the seizure of private property without pre-deprivation notice reasonably calculated to reach owners] constituted irreparable harm," *Ross v. Meese*, 818 F.2d 1132, 1135 (4th Cir. 1987) (Bracketed insert added); *see also Taylor v. Westly*, 402 F.3d 924, 933 (9th Cir. 2005); *Suever v. Connell*, 439 F.3d 1142 (9th Cir. 2006).

No post-deprivation process nor even a "damage award can undo the fact that the arbitrary taking that was subject to the right of procedural due process has already occurred." *Fuentes*, 407 U.S. at 82, *supra*.  And this Court has held that "[w]hen constitutional rights are threatened or impaired, irreparable injury is presumed." *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012).

This harm is not speculative but imminent and certain. The forfeiture date is fixed by statute. Absent injunctive relief, Appellants will suffer the permanent loss of both their property rights and their Due Process protections at midnight on January 1, 2026 or on j. That certainty of constitutional injury is precisely the circumstance for which preliminary injunctive relief exists.

**6.** **The Balance of Equities And Public Interest Favor Injunctive Relief**

The balance of equities is self-evident and strongly favors granting a preliminary injunction. Absent FRAP Rule 8(a)(2) injunctive relief, Appellants, and those similarly situated, will suffer the permanent and irreversible loss of vested property rights and constitutional protections on January 1, 2026.  The unnoticed property seizures will continue unabated. And the State will ignore its constitutional obligations.  *See Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 578 (6th Cir. 2002) ("A plaintiff's harm from the denial of a preliminary injunction is irreparable if it is not fully compensable by monetary damages."); *see also Planned Parenthood Ass'n of Cincinnati, Inc. v. City of Cincinnati*, 822 F.2d 1390, 1400 (6th Cir. 1987) (finding irreparable harm based on a violation of constitutional rights). Those injuries cannot be undone by money damages, post-hoc administrative claims, or later judicial review.  And once ownership is extinguished by operation of law, the harm is complete.

By contrast, government Appellees suffer no legally cognizable harm from a preliminary injunction preserving the status quo. A brief continuation of that status quo while this litigation proceeds imposes, at most, a minimal administrative inconvenience rather than a legal or financial injury. By contrast, allowing title to be extinguished and the property transferred will irreversibly convert custodial trust

assets into funds for a private stadium project, making it virtually impossible to recreate the fund needed to honor every owner's property claims.

The public interest likewise overwhelmingly favors injunctive relief. There is no "public interest" in the enforcement of unconstitutional laws, and there is a profound public interest in ensuring that the Appellees, who act on behalf of the State comply with the Notice and Due Process and Takings Clauses of the United States Constitution. Protecting citizens from the permanent loss of private property without notice, hearing, or lawful public purpose is not merely a private concern but is a core constitutional value that safeguards public confidence in the rule of law.

## CONCLUSION

For the foregoing reasons, Appellants respectfully submit that this Court should grant their emergency motion for a stay pending appeal to enjoin the permanent transfer of title of unclaimed funds under Ohio House Bill 96 scheduled for January 1, 2026, thereby preserving the status quo until the merits of the appeal can be fully considered.

Respectfully submitted,

*/s/ William W. Palmer*

William W. Palmer
PALMER LAW GROUP, A PLC
907 Westwood Boulevard, No. 218
Los Angeles, California 90024
Tel: (310) 984-5074
Fax: (310) 491-0919
wpalmer@palmercorp.com

Jeffrey A. Crossman (0073461)
Marc E. Dann (0039425)
Andrew M. Engel (0047371)
Brian Flick (0081605)
DANNLAW
15000 Madison Avenue
Lakewood, Ohio 44107
Tel: (216) 373-0539
Fax: (216) 373-0536 Notices@dannlaw.com
jcrossman@dannlaw.com
aengel@dannlaw.com
bflick@dannlaw.com

*Counsel for Plaintiffs Mary Bleick, Todd Butler, Allen Skierski, and Gary Petrime*

## CERTIFICATE OF COMPLIANCE

I certify that:

___x___  1.  The attached brief is: Proportionately spaced, has a typeface of 14 points or more, and contains 4273 words;
            **or is**

_____  2.  Monospaced has 12 or fewer characters per inch.

Dated this 30th day of December 2025,

> */s/ William W. Palmer*
> William W. Palmer
> *Counsel for Plaintiffs Mary Bleick, Todd Butler, Allen Skierski, and Gary Petrime*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of **Appellants' EMERGENCY MOTION FOR STAY OF TEMPORARY PENDING APPEAL** was made on the below counsel of record via electronic mail by service of  CM/ECF on December 30, 2025:

Aneca E Lasley, Esq.
Andrea Elizabeth Howell, Esq.
Ice Miller LLP
250 West Street, Suite 700
Columbus, OH 43215-7509
Email: Aneca.Lasley@icemiller.com
Email: andrea.howell@icemiller.com

Joshua A. Klarfeld, Esq.
Ice Miller LLP
600 Superior Ave., East; Suite 1300
Cleveland, OH 44114
Email: joshua.klarfeld@icemiller.com

Palmer Law Group, a PLC

/s/ William W. Palmer
William W. Palmer