No. 25-3978

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

———————————————

MARY BLEICK; TODD BUTLER; ALLEN SKIERSKI; GARY PETRIME,
*Plaintiffs-Appellants*,

v.

SHERYL MAXFIELD, IN HER OFFICIAL CAPACITY AS DIRECTOR OF COMMERCE;
AKIL HARDY, IN HIS OFFICIAL CAPACITY AS SUPERINTENDENT OF THE
DIVISION OF UNCLAIMED FUNDS; ROBERT SPRAGUE, IN HIS OFFICIAL
CAPACITY AS TREASURER OF THE STATE OF OHIO; AND JOY BLEDSOE, IN HER
OFFICIAL CAPACITY AS EXECUTIVE DIRECTOR OF THE OHIO FACILITIES
CONSTRUCTION COMMISSION,
*Defendants-Appellees.*

———————————————

Appeal from the United States District Court for the
Southern District of Ohio
Case No. 2:25-cv-01140

———————————————

## APPELLEES' RESPONSE IN OPPOSITION TO APPELLANTS'
## EMERGENCY MOTION FOR STAY OF TEMPORARY [SIC]
## PENDING APPEAL MOTION TO EXPEDITE APPEAL

———————————————

Appellants' so-called "Emergency Motion for Stay of Temporary
[sic] Pending Appeal" (the "Emergency Motion," App. R. 22), seemingly
filed in a moment of panic, does not warrant any consideration, much less
relief on an emergency or any other basis. It is not only procedurally

improper, but also completely without merit. It can and should be denied for any of the independent reasons below.[1]

## I.    The Emergency Motion Is Procedurally Improper.

Appellants purportedly filed their Emergency Motion under Fed. R. App. P. 8(a) and 6 Cir. R. 27(c). They failed to comply with either Rule.

### A.    Appellants Ignored Appellate Rule 8(a)'s Threshold Requirement.

Appellants were required to file their request for relief in the first instance in the District Court, not here. "A party must ordinarily move first in the district court for the following relief: (A) a stay of judgment or order of a district court pending appeal…or (C) an order suspending, modifying, restoring, or granting an injunction while an appeal is pending." Fed. R. App. P. 8(a)(1). When seeking either a stay or injunction directly in the Court of Appeals, Appellants "must: (i) show that moving first in the district court would be impracticable; or (ii) state that, a motion having been made, the district court denied the motion or failed

---

[1] "Ohio Agency Appellees" are Sheryl Maxfield (in her official capacity as Director of Commerce), Akil Hardy (in his official capacity as Superintendent of the Division of Unclaimed Funds), Robert Sprague (in his official capacity as Treasurer of the State of Ohio), and Joy Bledsoe (in her official capacity as Executive Director of the Ohio Facilities Construction Commission).

to afford the relief requested and state the reasons given by the district court for its action." Fed. R. App. P. 8(a)(2)(A). Appellants did neither.

This Court has long treated compliance with Rule 8(a) as "the cardinal principle of stay applications." *Baker v. Adams Cnty./Ohio Valley Sch. Bd.*, 310 F.3d 927, 930 (6th Cir. 2002) (cleaned up); *see also Coleman v. Henderson*, 2024 WL 3687783, *3 (6th Cir. May 15, 2024), *cert. denied sub nom. Coleman v. Swartz*, 145 S. Ct. 385 (2024) (denying motion for preliminary injunction and restraining order, explaining, "this motion can first be filed in a court of appeals, but [appellant] has not satisfied the conditions for doing so—for example, by having failed to show that moving first in the district court is "impracticable."); *Black Farmers Agriculturalists Ass'n, Inc. v. Vilsack*, 6th Cir. Case No. 24-5119, Doc. No. 34 (attached as Exhibit 1) (recognizing that although this Court has "excused this requirement when circumstances warrant it…we have declined to excuse the requirement when the movant offers no reason for failing to satisfy Rule 8's admonitions").

Nothing prevented Appellants from filing their Emergency Motion in the District Court, whether the day after the District Court denied their Motion for a Preliminary Injunction and Motion for a Temporary

Restraining Order back on December 9, 2025 or an any date between then

and 24 hours before the challenged legislation became effective.[2]

_____

[2] Appellants reference a state court temporary restraining order ("TRO") relating to the subject legislation in a lawsuit their attorneys filed after failing to obtain identical relief in federal court and while this appeal remains pending. (*See* Emergency Mot., App. R. 22, Page # 16 n.2.)

Appellants neither attached that order, nor explained what that order actually did. Ohio Agency Appellees attach that order here as Exhibit 2, and note that it "**temporarily enjoined [Defendants] from certifying, transferring, diverting, reclassifying, liquidating, or otherwise expending funds held in the Ohio Unclaimed Funds Trust Account [sic].**" (Ex. 2 at 5 (emphasis in original).) Because the TRO was overly broad, the parties jointly filed a motion to modify it, asking the state court to clarify that "***Notwithstanding the foregoing, nothing in this Order shall be construed to prohibit the Division of Unclaimed Funds from continuing to administer the Ohio Unclaimed Funds Trust Fund in a custodial capacity, including the routine processing and payment of approved claims and ordinary administrative expenses.***" (Joint Mot. for Modification of the [State] Court's Dec. 23, 2025 Order Granting Pls.' Mot. for TRO, attached as Exhibit 3 (emphasis in original).)

On its face, both originally and even with the requested (but as yet unruled upon) modification, the state court TRO did not enjoin the legislation from become effective. That legislation—including the provisions deeming property deposited in Ohio's Unclaimed Funds Trust Fund ("UFTF") on or before January 1, 2016 abandoned and escheated by operation of law—became effective on January 1, 2026, **rendering Appellants' entire appeal moot**. To be clear, Ohio Agency Appellees have complied with the TRO, and regardless of title passing by operation of law, all funds that were in the UFTF before the state court issued the TRO remain in the UFTF today.

Appellants appear to recognize this issue, as they state in their Emergency Motion that "Appellee intends to execute the transfer of title to the $1.7 Billion worth of property, without notice to the property

Even if Appellants now argue futility, they're wrong for two reasons. *First*, asking the District Court to issue injunctive relief pending the outcome of the entire litigation is not the same as asking for injunctive relief pending the outcome of the appeal; just because a court may not believe an injunction is appropriate throughout the pendency of a case does not automatically mean it will reject such a request for the limited duration of an appeal (especially an expedited one). *See, e.g.*, *Estill v. Cool*, 295 F. App'x 25, 26 (6th Cir. 2008) (recognizing compliance with Rule 8 where, after district court denied motion for preliminary injunction, "plaintiffs filed a notice of appeal and moved in the district court for an injunction pending appeal," after the denial of which, "the plaintiffs have now renewed their motion in this court.").[3]

*Second*, Appellants have not offered—and cannot offer—any explanation for why they failed to move to stay in the District Court.

---

owners, **upon the expiration of a state court granted temporary restraining order at midnight on December 31, 2026 [sic]**, if an injunction does not issue pursuant to FRAP Rule 8(a)(2)." (Emergency Mot., App. R. 22, Page # 2 (emphasis added).)

[3] Of course, because the District Court explained in detail that *Knick v. Township of Scott, Pennsylvania*, 588 U.S. 180 (2019), precludes injunctive relief here, it is perhaps not surprising Appellants chose not to ask the District Court to reiterate that the relief they seek is unavailable.

### B.    Appellants Violated Sixth Circuit Rule 27(c)(2).

Emergency motions must attach the notice of appeal, the order appealed from, and any other record materials necessary to resolve the request. 6 Cir. R. 27(c)(2). Appellants attached none of these required items. That omission is independently fatal.

## II.    The Emergency Motion Is Internally Incoherent and Fails to Specify the Relief Sought, Though None Is Warranted.

Appellants' caption ("APPELLANTS' EMERGENCY MOTION FOR STAY OF TEMPORARY PENDING APPEAL") is unintelligible, and the body of their Motion oscillates between seeking a preliminary injunction and a stay pending appeal. (*See* Emergency Mot., App. R. 22, Page ## 4, 20.) The ambiguity alone warrants denial. Appellants must articulate what it is they want this Court to do; they have not, and neither this Court nor Ohio Agency Appellees should be required to guess.

### A.    A stay pending appeal would accomplish nothing.

Assuming Appellants intended to seek a stay, it's entirely unclear what they want stayed. The District Court **denied** their request for a TRO and preliminary injunction. A stay of that order would not actually have put the challenged legislation on hold. That would have required a

form of injunction that has not been issued by any court, rendering a stay here meaningless (especially because the legislation already went into effect on January 1, 2026).

**B.   Appellants are not entitled to an injunction, either.**

If Appellants' Emergency Motion actually seeks an injunction, they were (and are) not entitled to that, either, for all the reasons the District Court articulated in its Order (attached here as Exhibit 4) and in Ohio Agency Appellees' Brief submitted on December 22, 2025 (App. R. 20).

The Supreme Court's decision in *Brown v. Gilmore*, 533 U.S. 1301 (2001), is squarely on point. There, the Court explained: "[A]pplicants are seeking not merely a stay of a lower court judgment, but an injunction against the enforcement of a presumptively valid state statute." *Id.* at 1302. "The All Writs Act, 28 U.S.C. § 1651(a), is the only source of this Court's authority to issue such an injunction," and "[s]uch an injunction is appropriate only if the legal rights at issue are indisputably clear." *Id.* (cleaned up). In *Brown*, as here, for the same reasons the District Court recognized, "[w]hatever else may be said about the issues and equities in this case, the rights of the applicants are not 'indisputably clear.'" *Id.*

### C.    Appellants cannot meet the factors for either a stay or injunction pending appeal.

If the Court considers the merits of Appellants' Emergency Motion, the standard for both a stay and injunction pending appeal is the same as the standard for granting an injunction in the first place:

> The court balances the traditional factors governing injunctive relief in ruling on motions to stay pending appeal. Thus, we consider (1) whether the defendant has a strong or substantial likelihood of success on the merits; (2) whether the defendant will suffer irreparable harm if the district court proceedings are not stayed; (3) whether staying the district court proceedings will substantially injure other interested parties; and (4) where the public interest lies.

*Baker*, 310 F.3d at 928 (citing *Grutter v. Bollinger*, 247 F.3d 631, 632 (6th Cir. 2001) (order); *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991)); *see also Overstreet v. Lexington-Fayette Urb. Cnty. Gov't*, 305 F.3d 566, 572 (6th Cir. 2002) ("the Court is to engage in the same analysis that it does in reviewing the grant or denial of a motion for a preliminary injunction"); *Estill*, 295 F. App'x at 27 ("We also deny the request for an injunction pending appeal because Estill has not demonstrated a right to injunctive relief pending appeal under the four-factor test.").

For the same reasons set forth in the District Court's Order and in Appellees' Brief, Appellants cannot carry their burden and are not entitled to injunctive relief. Ohio Agency Appellees are cognizant of this Court's admonitions against incorporating documents by reference in appellate filings, and for that reason they offer, in condensed fashion, the arguments from their Brief for why Appellants cannot establish the injunctive relief factors. *See generally Wineries of Old Mission Peninsula Ass'n v. Twp. of Peninsula, MI*, 2022 WL 22236853, *2 (6th Cir. Aug. 23, 2022).

### 1.     Injunctive relief is unavailable under *Knick* and its progeny.

There is a threshold problem with Appellants' request for injunctive relief. In *Knick*, the Supreme Court considered the remedies available to parties for alleged takings. As the Court recognized, "the federal and nearly all state governments provide just compensation remedies to property owners who have suffered a taking." *Knick*, 588 U.S. at 201. Therefore, "[a]s long as an adequate provision for obtaining just compensation exists, there is **no basis** to enjoin the government's action effecting a taking." *Id.* (emphasis added).

Contrary to Appellants' arguments, the Court's exposition of takings remedies is not limited to those available only after a taking has occurred. The Court assured government actors that, "[a]s long as just compensation remedies are available—as they have been for nearly 150 years—injunctive relief will be foreclosed." *Id*. at 205. Complete relief, via compensation, is attainable through a Fifth Amendment takings claim, should Appellants prevail. As the Court recognized, it is because of the "availability of post-taking compensation" that "barring the government from acting will ordinarily not be appropriate." *Id.* at 202.[4]

Appellants' claims do not qualify for injunctive relief—should they eventually succeed on the merits, they have an adequate remedy at law. Although, as explained below, the challenged legislation does not result in a taking, even if it did, the legislation itself permits Appellants to

---

[4] *See also Knellinger v. Young*, 134 F.4th 1034, 1038, 1043-45 (10th Cir. 2025) (affirming dismissal of equitable claims regarding unclaimed property because, by virtue of takings claim, plaintiffs had adequate remedy at law and could "obtain just compensation," making injunctive relief unavailable); *Narrigan v. Goldberg*, 772 F. Supp. 3d 182, 187, 193-94 (D. Mass. 2025) (reasoning in challenge to Massachusetts's Disposition of Unclaimed Property Act that plaintiff was ineligible for injunctive relief; recognizing, based on *Knick*, that court cannot "halt an ongoing taking or prevent a future" taking when property owners can "obtain just compensation.").

submit claims for reimbursement for their unclaimed funds until **2036**. Thus, *Knick* precludes the relief Appellants seek.

### 2. Appellants also cannot satisfy any of the injunctive relief factors.

#### a. Appellants do not have a strong likelihood of success on the merits.

Despite focusing their arguments in the District Court on their takings claim, Appellants' Emergency Motion doubles down on their appellate efforts to instead seek relief almost exclusively on due process grounds. Ultimately, though, they cannot establish a strong likelihood of success on the merits of either claim, which is fatal to their attempt to obtain a stay or injunction pending appeal. *See Gonzales v. Nat'l Bd. of Medical Exam'rs*, 225 F.3d 620, 632 (6th Cir. 2000) (concluding that it need not consider the remaining injunction factors because the plaintiff had "no likelihood of success on the merits").

##### i. Takings

Escheat statutes, like the ones at issue here, have been around—and have withstood constitutional challenges—for decades. The legislation is constitutional, and the State's assumption of title is not a taking.

11

Courts begin their statutory analysis with a presumption that legislative enactments are constitutional; the party challenging constitutionality "bears the burden of proving that it is unconstitutional beyond a reasonable doubt." *Plain Loc. Sch. Dist. Bd. of Educ. v. DeWine*, 486 F. Supp. 3d 1173, 1196 (S.D. Ohio 2020). Indeed, "[c]ourts construe statutes to avoid constitutional difficulty when 'fairly possible.'" *Eubanks v. Wilkinson*, 937 F.2d 1118, 1122 (6th Cir. 1991) (quoting *Crowell v. Benson*, 285 U.S. 22 (1932)).

Escheat statutes have long been the subject of constitutional challenges, resulting in voluminous precedent confirming their constitutionality. Two Supreme Court cases are dispositive. First, in *Standard Oil Co. v. New Jersey*, 341 U.S. 428, 430 (1951), the plaintiff challenged New Jersey's Escheat Act. The Act provided that, if property was unclaimed for 14 years, "such personal property shall escheat to the State." *Standard Oil Co.*, 341 U.S. at 430. The plaintiff argued that the Act constituted an unconstitutional deprivation of its property. *Id.* at 431-32. The Court upheld the Act, explaining that "a state, subject to constitutional limitations, may use its legislative power to dispose of property within its reach, belonging to unknown persons." *Id.* at 436.

The Supreme Court also examined the constitutionality of an Indiana law that provided for the lapse of mineral rights after twenty years of nonuse. *Texaco, Inc. v. Short*, 454 U.S. 516, 518-19 (1982). That law extinguished the owners' mineral rights and vested them in the then-current property owner. *Id.* As here, the appellants argued that the law resulted in an unconstitutional taking. *Id.* at 522.

The Court disagreed, observing that "the State has the power to condition the permanent retention of [a] property right on the performance of reasonable conditions that indicate a present intention to retain the interest." *Id.* at 526. Examining its prior decisions, the Court concluded that, "[i]n each instance, as a result of the failure of the property owner to perform the statutory condition, an interest in fee was deemed as a matter of law to be abandoned and to lapse." *Id.* at 529. That did not constitute a taking: "**this Court has never required the State to compensate the owner for the consequences of his own neglect**." *Id.* at 530 (emphasis added).[5]

---

[5] *See also Delaware v. New York*, 507 U.S. 490, 497 (1993) ("States as sovereigns may take custody of or assume title to abandoned personal property as *bona vacantia*, a process commonly…called escheat."); *Texas Mun. League Intergovernmental Risk Pool v. Texas Workers' Comp.*

The way the statutes have been amended precludes Appellants' takings claims. When individuals have abandoned their property, "the former owner retains no interest for which he may claim compensation." *Texaco*, 454 U.S. at 530. "It is the owner's failure to make any use of the property—and not the action of the State—that causes the lapse of the property right; there is no 'taking' that requires compensation." *Id.* at 517. Further, a State may place reasonable conditions on the ownership of property. *See id.* at 526 ("We have no doubt that, just as a State may create a property interest that is entitled to constitutional protection, the State has the power to condition the permanent retention of that property right on the performance of reasonable conditions that indicate a present intention to retain the interest."). Here, that "reasonable condition" is filing a claim in order to effectuate the return of unclaimed property. If

---

*Comm'n*, 74 S.W.3d 377, 382 (Tex. 2002) ("Under absolute-escheat statutes, the state acquires title to property through operation of law or a judicial proceeding"; recognizing escheat statutes are constitutional if they give claimants notice after the state acquires the funds and an administrative and judicial hearing to adjudicate claims); *Christianson v. King Cnty.*, 239 U.S. 356 (1915) (holding legislature had authority to codify escheat on death statute, and that escheat under law was proper); *Sec. Sav. Bank v. State of California*, 263 U.S. 282 (1923) (holding abandoned funds properly escheated to the State of California after providing reasonable notice).

the owner fails or refuses to do so, as Appellants have done here, the State is not required "to compensate the owner for the consequences of his own neglect." *Id.*

The legislation here is on the right side of *Standard Oil Co.* and *Texaco*. What Appellants claim amounts to an unconstitutional taking is not; it is a State's placement of reasonable conditions on property ownership, and the loss of ownership rights flows from "the owner's failure to make any use of the property—and not the action of the State." *Texaco*, 454 U.S. at 530.

In the face of controlling authority, Appellants again rely on *Sogg v. Zurz*, 121 Ohio St.3d 449 (2009). (*See* Emergency Motion, App. R. 22, Page # 9.) The Ohio Supreme Court in *Sogg* did not issue a prohibition (nor could it) on amending the statutes at issue here. Quite the contrary, it recognized that because the statutes at that time **did not** use the words "escheated" or "abandoned," there was no evidence that Ohio's General Assembly intended for it to allow a finding of abandonment: "The UFA does not use any form of the words…'abandoned,' or 'escheated' except in referring to the laws of other states. R.C. 169.041. Nothing in the [Statute] indicates that the General Assembly intended to treat

unclaimed funds as if they had been abandoned…or escheated." *Sogg*, 121 Ohio St.3d at 451. That is exactly what the amended statutes do now—they use the precise terms "abandoned" and "escheat." R.C. 169.08(I)(1), (2), (3), (4), (5). Rather than providing a basis for Appellants to succeed on the merits, *Sogg* demonstrates why they cannot.

### ii.    Due Process

As noted above, Appellants now attempt to base their request for relief on a due process claim that was never part of their underlying motion, and thus, not part of this appeal. More fundamentally, Appellants' due process complaints presume the legislation operates to deprive them of their property which, as explained above, it does not. Finally, even if they were entitled to notice, Appellants received constitutionally adequate notice, rendering their due process claims without merit.

Notice is constitutionally adequate if it is "**reasonably calculated**, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950) (emphasis added). Contrary to Appellants' argument, though, *Mullane*'s

notice requirements are not limitless. "Due process does not require that a property owner receive actual notice before the government may take his property." *Jones v. Flowers*, 547 U.S. 220, 226 (2006).

In the context of escheat statutes, the Supreme Court has already opined on what constitutes adequate notice. In *Standard Oil Co.*, the Court examined the notice provisions of New Jersey's unclaimed funds statute. That statute **required only notice by publication**, and that was sufficient. *Standard Oil Co.*, 341 U.S. at 443.

Importantly, Appellants here had notice far exceeding constitutional due process requirements. In addition to the statutory notice requirements set forth in Ohio Revised Code Chapter 169, Appellants admit they each had **actual notice** of funds in the UFTF, as they allege that "[e]ach [Appellant] has confirmed, via a review of the website maintained by the Ohio Division of Unclaimed Funds, that the State is currently holding unclaimed property to which they are entitled[.]" (Complaint, R. 1, Page ID # 4, ¶ 13.) That admission makes it indisputable that Appellants had actual notice, which exceeds what was constitutionally required of Ohio Agency Appellees. *See Keene Grp., Inc. v. City of Cincinnati, Ohio*, 998 F.3d 306, 312 (6th Cir. 2021) (recognizing

17

that a party's "actual notice" defeats a due process argument about the adequacy of notice issued). Whether or not Appellants received any additional statutory notice, their due process rights have been satisfied as a matter of law. Thus, their due process claim cannot succeed.

### b. Appellants will not suffer irreparable harm.

The relative strength or weakness of the movant's likelihood of success on the merits "can often drive the results of a request for injunctive relief." *Int'l Union of Painters & Allied Trades Dist. Council No. 6 v. Smith*, 148 F.4th 365, 371 (6th Cir. 2025). However, the "irreparable harm factor is indispensable because, without it, a plaintiff cannot show why he needs relief now rather than at the lawsuit's end." *Id.* (citations and quotations omitted). Accordingly, "the existence of an irreparable injury is mandatory," and only if shown, is the "extent of an injury" considered and balanced against other factors to determine a party's entitlement to injunctive relief. *Id.* (citations and quotations omitted); *see also D.T. v. Sumner Cnty. Sch.*, 942 F.3d 324, 327 (6th Cir. 2019) ("the existence of an irreparable injury is mandatory").

Appellants have not established they will suffer irreparable harm absent a stay or appellate injunction. It is well established that

preliminary injunctive relief "is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). Where injuries have "an adequate remedy at law," such as sufficient monetary relief, those injuries are not "irreparable." *Id.*

In the takings context in particular, the Supreme Court has long recognized that "[e]ven where the remedy at law is less clear and adequate, where large public interests are concerned, and the issuance of an injunction may seriously embarrass the accomplishment of important governmental ends, a court of equity acts with caution, and only upon a clear showing that its intervention is necessary in order to prevent irreparable injury." *Hurley v. Kincaid*, 285 U.S. 95, 104 n.3 (1932) (finding no such showing was made even because takings complaint is "confined to the failure to compensate him for the taking, and affords no basis for an injunction if such compensation may be procured in an action at law").

Thus, to establish they will face irreparable harm in the absence of injunctive relief, Appellants were required to show they are at risk of

suffering some harm that "is not fully compensable by monetary damages." *Smith*, 148 F.4th at 371 (quotation omitted). And *Knick* was clear: "As long as an adequate provision for obtaining just compensation exists, there is no basis to enjoin the government's action effecting a taking." 588 U.S. at 201.

Appellants have no answer for *Knick* or *Smith*, and those cases control here. The authorities on which Appellants rely are markedly distinguishable, and Appellants make no attempt to address or contend with these distinctions.[6]

---

[6] The statement of Appellants' counsel, Marc Dann, is noteworthy. He admitted in a published interview that "even if [Appellants did not get a preliminary injunction], **that money can always,…[t]he state can reimburse the unclaimed funds account**." *See* Karen Kasler, The Statehouse News Bureau, "Federal judge rules Ohio can transfer unclaimed funds to be used for Browns' stadium," Dec. 10, 2025, available at https://www.statenews.org/government-politics/2025-12-10/federal-judge-rules-ohio-can-transfer-unclaimed-funds-to-be-used-for-browns-stadium (last visited Dec. 22, 2025) (emphasis added). Ohio Agency Appellees respectfully request that the Court take judicial notice of Mr. Dann's statements, pursuant to Fed. R. Evid. 201(b), as they highlight Appellants' inability to establish irreparable harm.

### c. The "substantial harm to others" and "public interest" factors do not support injunctive relief.

Issuing an injunction requires the Court to consider whether an injunction would cause substantial harm to others and is in the public interest. *Ammex, Inc. v. Wenk*, 936 F.3d 355, 359 (6th Cir. 2019). "Unless the statute is unconstitutional, enjoining a…statute enacted by [a state's] Legislature…would seriously and irreparably harm [the State]." *Thompson v. Dewine*, 959 F.3d 804, 812 (6th Cir. 2020) (quoting *Abbott v. Perez*, 585 U.S. 579 (2018)). Indeed, this Court recognizes that a state's inability to conduct its affairs "in accordance with its lawfully enacted" legislation, constitutes "[s]erious and irreparable harm," and that "giving effect to the will of the people by enforcing the laws they and their representatives enact serves the public interest." *Id.* (citing *Coal. to Defend Affirmative Action v. Granholm*, 473 F.3d 237, 252 (6th Cir. 2006)).

Here, Appellants' request—whatever it may be—stands to inflict an injury on the State of Ohio and its citizens; specifically, an injury "to [its] interest in enforcing [its] duly enacted laws without contradiction from the federal government." *Tennessee v. Dep't of Educ.*, 104 F.4th 577, 594-

95 (6th Cir. 2024). These factors do not support granting the stay or injunction pending appeal that Appellants seek.

## III.  Appellants Continue to Advocate for an Improper Injunctive Relief Standard.

As they did in their "Corrected" Brief and in their Reply Brief (App. R. 18, 21), Appellants continue to advocate for a reduced injunction standard that requires only a "likelihood of success on the merits." (Corrected Br., App. R. 18, Page ID # 31; Reply Br., App. R. 21, Page # 20; Emergency Mot., App. R. 22, Page # 15.) No matter how many times they try to reduce the standard, this Circuit—consistent with the Supreme Court—requires a greater showing than just a "likelihood of success on the merits." *See Nken v. Holder*, 556 U.S. 418, 426 (2009) (a case on which Appellants themselves rely, recognizing that one of the factors courts must consider on motion for stay pending appeal is whether the movant "has made a **strong showing** that he is likely to succeed on the merits" (emphasis added)); *Smith*, 148 F.4th at 371 (quoting *Ohio v. Becerra*, 87 4th 759, 768 (6th Cir. 2023)) ("Courts consider four factors when determining whether to grant a preliminary injunction: '(1) whether the movant has a **strong likelihood of success** on the merits….'" (emphasis added)); *Churchill Downs Tech. Initiatives Co. v.*

*Michigan Gaming Control Bd.*, 2025 WL 3637925, *3 (6th Cir. Dec. 16, 2025) ("a likelihood of success on the merits isn't enough.").

## IV.   Conclusion

Throughout this appeal, Appellants have repeatedly ignored the governing Rules, attempted to reduce their burden, relied on overruled case law, and sought different relief on appeal from what they sought (or failed to seek) below. They have not demonstrated a basis to grant an injunction or "stay," much less on an emergency basis.

Therefore, Ohio Agency Appellees respectfully ask this Court to deny Appellants' Emergency Motion.

Respectfully submitted,

/s/ *Aneca E. Lasley*
Aneca E. Lasley
 *Lead Counsel*
ICE MILLER LLP
250 West Street, Suite 700
Columbus, Ohio 43215
(614) 462-1085
Aneca.Lasley@icemiller.com

Joshua A. Klarfeld
ICE MILLER LLP
600 Superior Avenue East, Suite 1600
Cleveland, OH 44114
(216) 394-5063
Joshua.Klarfeld@icemiller.com

*Counsel for Appellees*

## CERTIFICATE OF COMPLIANCE WITH RULE 32(A)

1.    This Response complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) and the Certificate of Compliance Requirement of Fed. R. App. P. 32(g)(1) because it is a "paper submitted under" Rule 27(d)(2)(A) and contains 4,975 words.

2.    This Response complies with the typeface and type style requirements of Fed. R. App. P. 27(d)(1)(E), 32(a)(5), and 32(a)(6) because this Response has been prepared in a proportionally spaced typeface using Microsoft Word 2013 in 14-point Century Schoolbook font.

Date: January 5, 2026

/s/ *Aneca E. Lasley*
Aneca E. Lasley

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 5, 2026, I electronically filed the foregoing with the Clerk of the Court of the United States Court of Appeals for the Sixth Circuit by using the CM/ECF system. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ *Aneca E. Lasley*
Aneca E. Lasley