Court of Appeals Docket No. 25-3978

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

MARY BLEICK; TODD BUTLER; ALLEN SKIERSKI;
GARY PETRIME

*Plaintiffs - Appellants*,

v.

SHERYL MAXFIELD; SUPERINTENDENT AKIL HARDY; ROBERT SPRAGUE; JOY BLEDSOE,

*Defendants - Appellees.*

Appeal from the United States District Court for the
Southern District of Ohio, Eastern Division, 2:25-cv-01140-EAS-EPD,
The Honorable Judge Edmund A. Sargus

**APPELLANTS' REPLY IN SUPPORT OF EMERGENCY MOTION FOR INJUNCTION PENDING APPEAL**

## I.   INTRODUCTION

Appellants appeal from a denial of a preliminary injunction barring the State from transferring, that is, altering ownership and control, of funds held in the State's Unclaimed Funds Trust Fund ("UFTF"), pursuant to revised O.R.C. 169.08(I). The current motion seeks an injunction under Fed. R. App. P. 8 pending resolution of this appeal on the merits. As such, the current motion and the merits of the appeal contain a natural redundancy of the parties' arguments.

1

In the present motion, Appellants ask the Court, pursuant to Fed. R. App. P. 8(a)(2), "to enjoin the permanent transfer of unclaimed funds under Ohio House Bill 96 scheduled for January 1, 2026, thereby preserving the status quo until the merits of the appeal can be fully considered." Doc. 22, Page 20. Thus, contrary to the State Officials' protestations, there is no doubt what Appellants' are asking this Court to do.

And the requested relief is needed by January 8, 2026, when the permanent transfer of $1.7 Billion in private trust funds is scheduled to begin. Although a state court has issued a temporary restraining order through January 8, 2026, on purely state law grounds, Appellants ask that their federal constitutional claims be preserved while this appeal proceeds.

## II. THE MOTION IS NOT PROCEDURALLY DEFECTIVE

### A. Rule 8(a) Does Not Bar Relief

Rule 8(a)(1) is not jurisdictional. The Court retains discretion to excuse a district court first-filing requirement where such a filing is impracticable. In this case, such a request is impracticable because irreversible harm is set to occur on January 8, 2026, upon expiration of a state-court temporary restraining order. There is insufficient time to have the district court address the issue. In such cases, this Court has found impracticability. *Ky. ex rel. Danville Christian Acad., Inc. v. Beshear*, 981 F.3d

505, 508 (6th Cir. 2020) ("In-person instruction, however, is expected to resume at religious schools in the Commonwealth this coming Monday. Moving first in the district court would therefore have been impracticable, and we consider the Governor's motion under Rule 8(a)(2).").

### B.     Rule 27(c)(2) Issues Are Curable

Any omission of attachments is technical, non-prejudicial, and curable. The relevant orders are already before the Court as part of the appeal. Courts routinely permit supplementation rather than denying emergency relief on hyper-technical grounds.

Appellants attach hereto their *Notice of Appeal*, R. 46, PAGEID #: 681, the district court *Opinion and Order*, R. 44, PAGEID #: 459, and a portion of the district court hearing transcript. R. 45, PAGEID #: 482.

## III.  THE APPEAL IS NOT MOOT

The State Officials argue that the appeal is now moot because the H.B. 96 amendments to Chapter 169 went into effect on January 1, 2026. But this is a semantical distinction without a difference. Although Appellants have not asked for the Court to enjoin the H.B. 96 amendments from going into effect in their entirety, they have asked the Court to bar transfer of the funds from the UFTF.

"Transfer" means "to convey from one person, place, or situation to another." Merriam-Webster, (https://www.merriam-webster.com/dictionary/transfer) (last

accessed Jan. 6, 2026). By asking the Court to halt the transfer of funds from the UFTF, where they were the property of individuals like Plaintiffs, to the State of Ohio, Appellants ask the Court to enjoin enforcement of one provision of the statute. Enjoining just that provision maintains the status quo during the pendency of the appeal.

And contrary to the State Officials' arguments, even under the All-Writs Act, such relief is warranted because Appellants' legal rights are "indisputably clear." The State Officials have offered no argument as to how the escheatment process of the H.B. 96 amendments provide anything resembling due process to those whose property the State seeks to confiscate.

## IV. APPELLANTS SATISFY THE INJUNCTION FACTORS

### A. Likelihood of Success On The Merits

#### 1. This Case Concerns Pre-Deprivation Process

An essential principle of Due Process is that a deprivation of property must be preceded by notice <u>and</u> an opportunity for hearing. *See Jones v. Flowers*, 547 U.S. 220 (2006); *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985). H.B. 96's amendments provide for no notice and no hearing.

There are two seizures of property at play in this action–the initial seizure, which transferred monies into the UFTF more than ten years ago, and the impending permanent escheatment of those funds to the State. And while the notice provisions

for the initial seizure are weak, the notice provisions for the permanent escheatment are nonexistent.

The State Officials admitted during the district court hearing that no attempt is made to provide individualized notice to property owners. R. 45 *Transcript of Oral Argument Proceedings*, Testimony of Amy Schellhammer, PAGEID #: 490 (no direct mail notice ever provided and the State's searchable website contains no mention of the January 1, 2026 escheatment date); PAGEID #: 491 (the State provides publication notice only after the funds are initially paid into the UFTF); PAGEID #: 501 (no notice provided to the property owners before H.B. 96 escheatment).

But even if Appellees provided proper pre-deprivation notice during this permanent escheatment process, because H.B. 96 makes no provision for a hearing prior to permanent escheatment, it is facially deficient, and any action by the State Officials to transfer the funds out of Ohio UFTF on January 1, 2026 is unconstitutional.

### 2. Due Process Is Required For Escheatment

In *O'Connor v. Eubanks*, 83 F.4th 1018 (6th Cir. 2023), this Court considered a government's argument that unclaimed property was "abandoned," meaning the plaintiff had no property interest deserving of due process protection. This Court disagreed and stated: "But this argument misses the point. Before the State can extinguish O'Connor's title in "abandoned" property, it must give him the full procedural protections of the Due Process Clause. *Id.*, p. 1024 (quoting *Short*, 454 U.S. at 534).

In other words, before it can legally recategorize a person's property rights as "abandoned," the government must provide notice and an opportunity to be heard.

This decision follows the Supreme Court's decision in *Standard Oil Co. v. New Jersey*, 341 U.S. 428, (1951) which approved of escheatment as a valid exercise of governmental power but acknowledged that such power is "subject to constitutional limitations." *Id*., at 435-6. A careful reading of *Standard Oil* discloses safeguards in the New Jersey statute not found in Ohio's application of its "escheatment" statute and H.B. 96. Prior to escheatment, the statute required the state to bring an action for escheatment that <u>prior</u> notice of the petition be published for multiple weeks and include the time and place of hearing on the petition, a description of the property at issue, name of the last known owner, and specifically declare the petition was seeking escheatment of private property. *Id*., p. 433. Therefore, due process concerns were not present in *Standard Oil*. See also, *Sec. Sav. Bank v. California*, 263 U.S. 282, 284-85 (1923) ("Upon the depositors, service is to be made by publication of the summons for four weeks in a newspaper of general circulation published in that county. With the summons a notice must also be published requiring all persons other than the named defendants, to appear and show cause why the moneys involved in the suit shall not be deposited with the state treasurer.").

And contrary to the State Officials' assertion, passage of H.B. 96 alone was insufficient to provide notice of the permanent escheatment deadline. Unlike the

6

statute at issue in *Texaco, Inc. v. Short,* 454 U.S. 516 (1982), H.B. 96 provides no "grace period" for the public to become familiar with the change of law and no notice of what they must do to avoid the permanent escheatment. In fact, the Ohio's Division of Unclaimed Funds has placed no information whatsoever on its "searchable website" to inform the public that monies will be permanently escheated on January 1, 2026. R. 45, *Transcript of Oral Argument Proceedings*, Testimony of Amy Schellhammer, PAGEID # 490. Such inaction suggests that the State Officials do not want the public to know about the change of law and what that might mean for owners of unclaimed funds.

Rather than actively concealing the change of law, the government must provide property owners the opportunity to avoid the escheatment. Here, only six months will have passed between the passage of H.B. 96 and the permanent escheatment of all property held in the UFTF more than 10 years. This is precisely the situation that Justice Stevens believed denied Due Process to property owner. He stated that the statute at issue in *Hodel* "… deprived decedents of due process of law by failing to provide an adequate grace period in which they could arrange for the consolidation of fractional interests [in the subject property interests] in order to avoid abandonment." *Hodel*, 481 U.S. at 730, *supra*. Similarly, Judge Posner of the Seventh Circuit observed that a three-year abandonment period in Indiana's unclaimed funds statute was "a period so short as to present a serious question whether it is consistent with

7

the requirement in the Fourteenth Amendment that property not be taken without due process of law, implying adequate notice and opportunity to contest." *Cerajeski v. Zoeller*, 735 F.3d 577, 582 (7th Cir. 2013).

**B.     Irreparable Harm**

The second factor for preliminary injunctive relief requires a showing that the plaintiff would "…suffer irreparable harm in the absence of preliminary relief." *Winter v. NRDC, Inc.*, 555 U.S. 7, 27 (2008). Appellants demonstrate that they will suffer irreparable harm without an injunction.

The constitutional violation itself - the deprivation of property without adequate notice or opportunity to be heard - constitutes irreparable harm. This Court has recognized that "[w]hen constitutional rights are threatened or impaired, irreparable injury is presumed." *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012) (citing *ACLU of Ky. v. McCrearyCounty, Ky.*, 354 F.3d 438, 445 (6th Cir. 2003)). This presumption applies with particular force to procedural Due Process violations, which cannot be adequately remedied after the fact.

**C.     Balance of Harms**

Absent injunctive relief, Appellants will suffer the permanent and irreversible loss of vested property rights without constitutionally required notice or opportunity to be heard. This harm cannot be adequately remedied after the fact. Once ownership is extinguished by operation of law on January 1, 2026, the constitutional violation

will be complete. And Appellants, and those citizens in other countries and states, and those citizens with property valued at less than $50 are all at risk under the Appellees' unnoticed application of the "escheatment" program

On the other hand, the State Officials would suffer minimal harm from a delay in implementing the escheatment provisions of H.B. 96. The UFTF has operated as a custodial trust for decades, and a brief continuation of that status quo while the litigation proceeds imposes, at most, a minimal administrative inconvenience. The state has not demonstrated any urgent need to permanently escheat the funds on January 1, 2026, rather than maintaining the current custodial system while the constitutional challenges to H.B. 96 are resolved.

### D. Public Interest

The third and fourth factors for preliminary injunctive relief are that the party seeking injunctive relief establishes that "the balance of equities tips in his favor," and "that an injunction is in the public interest." *Winter*, 555 U.S. at 20, *supra*. When the government is a party, these factors merge. *Ohio v. Becerra*, 87 F.4th 759, 768 (6th Cir. 2023). Both factors favor granting a preliminary injunction in this case.

First, the public interest strongly favors protecting constitutional rights. The Supreme Court has recognized that the purpose of procedural due process is not merely to ensure abstract fair play, but to protect individuals' use and possession of property from arbitrary encroachment and to minimize substantively unfair or

mistaken deprivations. *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, *supra*. These interests are served by enjoining the enforcement of H.B. 96's escheatment provisions until the constitutional challenges are resolved.

Second, allowing the permanent escheatment to proceed before the constitutional challenges are resolved could create significant practical problems if the Court ultimately finds H.B. 96 unconstitutional. Once the funds are transferred from the UFTF and spent on a private football stadium, it may be difficult or impossible to restore the status quo. This practical consideration weighs in favor of maintaining the status quo through a preliminary injunction.

Third, the public interest is not served by allowing the State to permanently escheat property without providing constitutionally adequate notice to known property owners. The Due Process Clause protects all citizens from arbitrary government action, and enforcing these constitutional protections serves the public interest. The State's failure to take such steps undermines public confidence in the fairness and legitimacy of government actions.

## V.   CONCLUSION

Appellants have demonstrated all four requirements for injunctive relief: a strong likelihood of success on the merits of their constitutional claims, irreparable harm from the permanent deprivation of property without due process, a balance of

equities that favors maintaining the status quo, and a public interest in ensuring that government actions comply with constitutional requirements.

This Court should grant an injunction enjoining Appellees from enforcing the escheatment provisions of H.B. 96 pending final resolution of this case.

Respectfully submitted,

/s/ Marc E. Dann
Jeffrey A. Crossman (0073461)
Marc E. Dann (0039425)
Andrew M. Engel (0047371)
Brian Flick (0081605)
DANNLAW
15000 Madison Avenue
Lakewood, Ohio 44107
Tel: (216) 373-0539
Fax: (216) 373-0536
notices@dannlaw.com
mdann@dannlaw.com
jcrossman@dannlaw.com
aengel@dannlaw.com
bflick@dannlaw.com

William W. Palmer
PALMER LAW GROUP, A PLC
907 Westwood Boulevard, No. 218
Los Angeles, California 90024
Tel: (310) 984-5074
Fax: (310) 491-0919
wpalmer@palmercorp.com

*Counsel for Plaintiffs Mary Bleick, Todd Butler, Allen Skierski, and Gary Petrime*

11

## CERTIFICATE OF COMPLIANCE

I certify that: The attached memorandum is: Proportionately spaced, has a typeface of 14 points or more, and contains 2475 words;

Dated this 6th day of January 2026.

/s/ Marc E. Dann
Marc E. Dann
*Counsel for Plaintiffs Mary Bleick, Todd Butler, Allen Skierski, and Gary Petrime*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of **Appellants' Reply Memorandum in Support of Injunction Pending Appeal** was made on the below counsel of record via electronic mail by service of CM/ECF on January 6, 2025:

Aneca E Lasley, Esq.
Andrea Elizabeth Howell, Esq.
Ice Miller LLP
250 West Street, Suite 700
Columbus, OH 43215-7509
Email: Aneca.Lasley@icemiller.com
Email: andrea.howell@icemiller.com

Joshua A. Klarfeld, Esq.
Ice Miller LLP
600 Superior Ave., East; Suite 1300
Cleveland, OH 44114
Email: joshua.klarfeld@icemiller.com

/s/ Marc E. Dann
Marc E. Dann