Court of Appeals Docket No. 25-3978

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

MARY BLEICK; TODD BUTLER; ALLEN SKIERSKI;
GARY PETRIME

*Plaintiffs - Appellants*,

v.

SHERYL MAXFIELD; SUPERINTENDENT AKIL HARDY; ROBERT
SPRAGUE; JOY BLEDSOE,

*Defendants - Appellees.*

Appeal from the United States District Court for the
Southern District of Ohio, Eastern Division, 2:25-cv-01140-EAS-EPD,
The Honorable Judge Edmund A. Sargus

**PETITION FOR REHEARING AND REHEARING EN BANC**

*Attorneys for Plaintiffs-Appellants*

Jeffrey A. Crossman
Marc E. Dann
Andrew M. Engel
Brian Flick
DannLaw
15000 Madison Avenue
Lakewood, OH 44107
Telephone: (216) 373-0539
Facsimile:  (216) 373-0536
Email:  notices@dannlaw.com

William W. Palmer
Palmer Law Group, a PLC
907 Westwood Boulevard, No. 218
Los Angeles, CA 90024
Telephone: (310) 984-5074
Facsimile:  (310) 491-0919
Email:  wpalmer@palmercorp.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES                                                                III

STATEMENT IN SUPPORT OF EN BANC CONSIDERATION                      1

    A.    CONFLICT WITH CIRCUIT COURT PRECEDENT                    1

    B.    CONFLICT WITH SUPREME COURT PRECENDNT                  2

        1.    Notice and a Hearing is Required Prior to Deprivation of a Property Interest.                                                    2

        2.    **Error! Bookmark not defined.**

    C.    EXCEPTIONAL IMPORTANCE                                          5

ARGUMENT                                                                                  6

I.    THE PANEL DECISION MISCHARACTERIZES THE INJURY AS "ONLY MONEY," MISSING IRREPARABLE CONSTITUTIONAL HARM                                                                           7

II.    THE COURT'S DECISION MISAPPREHENDS APPELLANTS' DUE-PROCESS THEORY BY EQUATING "NOTICE OF CUSTODY" WITH CONSTITUTIONALLY ADEQUATE NOTICE OF PERMANENT ESCHEATMENT                                                         8

III.    THE PANEL DECISION ERRONEOUSLY TREATS POST-HOC "ACTUAL NOTICE" AS A SUBSTITUTE FOR THE PRE-DEPRIVATION NOTICE AND OPPORTUNITY TO BE HEARD THAT DUE PROCESS REQUIRES                                                                     11

    A.  H.B. 96 PROVIDES NO NOTICE PRIOR TO PERMANENT DEPRIVATION OF TITLE.                                11

    B.  B. H.B. 96'S ESCHEATMENT SCHEME DOES NOT PROVIDE FOR ANY HEARING.                                         14

IV.    THE PANEL DECISION MISAPPLIES KNICK, IMPROPERLY FORECLOSING PROSPECTIVE EQUITABLE RELIEF FOR AN IMMINENT AND ONGOING CONSTITUTIONAL VIOLATION                15

CONCLUSION                                          17

CERTIFICATE OF COMPLIANCE                            19

CERTIFICATE OF SERVICE                               20

# TABLE OF AUTHORITIES

**Cases**

*Armstrong v. Manzo*,
   380 U.S. 545, 552 (1965) ................................................. 8, 11

*Carey v. Piphus*,
   435 U.S. 247, 266 (1978) ............................................... 15, 16

*Cerajeski v. Zoeller*,
   735 F.3d 577, 583 (7th Cir. 2013) ....................................... 6

*Conn. v. Doehr*,
   501 U.S. 1, 12 (1991) .................................................... 4

*Fuentes v. Shevin*,
   407 U.S. 67, 80-82 (1972) ........................................... 8, 11, 12

*Harris v. City of Akron*,
   20 F.3d 1396, 1401 (6th Cir. 1994) ..................................... 1, 14

*Hieber v. Oakland Cnty.*,
   136 F.4th 308, 321 (6th Cir. 2025) ...................................... 14

*Horne v. Dep't of Agric.*,
   576 U.S. 351, 362 (2015) ................................................ 16

*Jones v. Flowers*,
   547 U.S. 220, 225 (2006) ............................................. 3, 9, 12

*Keene Grp., Inc. v. City of Cincinnati, Ohio*,
   998 F.3d 306, 312 (6th Cir. 2021) ....................................... 11

*Knick v. Twp. of Scott*,
   588 U.S. 180 (2019) ................................................... passim

*McCulloch v. Maryland,*
   17 U.S. 316 (1819) ...................................................... 16

*Mennonite Bd. of Missions v. Adams,*
   462 U.S. at 800 ......................................................... 12

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
  339 U.S. 306, 314 (1950)                                    2, 8, 12

*Obama for Am. v. Husted*,
  697 F.3d 423, 436 (6th Cir. 2012)                                 8

*Plains All Am. Pipeline L.P. v. Cook*,
  866 F.3d 534 (3d Cir. 2017)                                      15

*Reid v. Maxfield*,
  No. 25CV010760                                                   14

*Sec. Sav. Bank v. California*,
  263 U.S. 282, 284-85 (1923)                                       3

*Standard Oil Co. v. New Jersey*,
  341 U.S. 428 (1951)                                            3, 15

*Tulsa Pro. Collection Servs., Inc. v. Pope*,
  485 U.S. 478, 485 (1988)                                         11

*United Church of Med. Ctr. v. Med. Ctr. Comm'n*,
  689 F.2d 693, 701 (7th Cir. 1982)                                16

*Warren v. City of Athens*,
  411 F.3d 697 (6th Cir. 2005)                                 1, 14, 17

**Federal Statutes**

Fed. R. App. P. 40(b)(2),                                           1

**Statutes, Regulations and Rules**

Ohio Rev. Code § 169.08(I)(1)–(3)                                   9

**STATEMENT IN SUPPORT OF EN BANC CONSIDERATION**

Pursuant to Fed. R. App. P. 40(b)(2), Appellants respectfully petition for rehearing en banc because (A) the panel's decision conflicts with the Court's decisions in *Warren v. City of Athens*, 411 F.3d 697 (6th Cir. 2005) and the full court's consideration is therefore necessary to secure or maintain uniformity of the Court's decisions; (B) the panel's decision conflicts with controlling decisions of the Supreme Court of the United States, and (C) this proceeding involves questions of exceptional importance.

**A.     CONFLICT WITH CIRCUIT DECISIONS**

The panel stated emphatically that Appellants' due process concerns could not serve as a basis to establish irreparable harm. *Opinion*, p. 4. The panel held that Appellants' actual notice through the State's unclaimed funds website "apprised them of 'the pendency of the [escheatment] and afford[ed] them an opportunity to present their objections,' which remedied any harm from the Act's allegedly unlawful notice provisions." *Ibid*. This conclusion contradicts *Warren*.

In *Warren*, this Court noted that "[g]enerally, the process that is due before a property deprivation includes prior notice and an opportunity for a predeprivation hearing." *Id.,* at 709 (citing *Harris v. City of Akron*, 20 F.3d 1396, 1401 (6th Cir. 1994)). The Court acknowledged that the plaintiffs had received sufficient notice but had not received a hearing to contest the proposed action. *Id*. The Court concluded

1

that "[u]nder circuit precedent, a § 1983 plaintiff can prevail on a procedural due process claim by demonstrating that the property deprivation resulted from . . . an established state procedure that itself violates due process rights... ." *Id*. So it is with H.B. 96.

Yet the panel decision disposed of the hearing requirement completely and without analysis. Thus, the panel essentially held that where property use and ownership are impaired through government action, other than a taking, the property owner is not entitled to a hearing. This conclusion directly contradicts *Warren* and should be reconsidered.

**B.    CONFLICT WITH SUPREME COURT PRECEDENT**

**1.    Notice And A Hearing Is Required Prior To Deprivation Of A Property Interest.**

The panel affirmed the denial of emergency relief even though HB 96 permanently extinguishes private title to billions in custodial trust funds without any individualized, pre-deprivation notice to vast numbers of known–or readily ascertainable–owners. The panel's approach conflicts with the Supreme Court's bedrock rule that due process requires notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action" at a time when the deprivation can still be prevented. *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). Where the government knows an owner's identity or can ascertain it with reasonable effort, publication is not enough. *Id.* at 318 - 320.

2

And where mailed notice fails, due process requires "additional reasonable steps" if practicable before the government finally divests an owner of property. *Jones v. Flowers*, 547 U.S. 220, 225 (2006).

More specifically, Supreme Court precedent demands that an escheatment process provide both notice *and* a hearing. *Standard Oil Co. v. New Jersey*, 341 U.S. 428 (1951 In that case, the statute required that prior to escheatment the state had to bring a court action. The law also provided that prior notice of the petition be published for multiple weeks and include the time and place of hearing on the petition, a description of the property at issue, name of the last known owner, and specifically declare the petition was seeking escheatment of private property. *Id.*, p. 433. Therefore, Supreme Court precedent requires not only significantly more robust notice of escheatment, it also requires an actual hearing. *See also*, *Sec. Sav. Bank v. California*, 263 U.S. 282, 284-85 (1923).

Ohio's scheme does the opposite. The State conceded through testimony that it does not send letters or emails to all owners with property in the Unclaimed Funds Trust Fund ("UFTF"), and that the State's own website landing page contains no mention that, on January 1, 2026, ownership of funds "transfers to the state." Instead, owners must discover that the State holds their property by chance by searching the State's website or by after-the-fact publication mechanisms that - by statute and practice - exclude a majority of properties. And even if they do discover that the

State is in possession of their funds, the State provides no notice or hearing prior to permanent divestment of title. That is precisely the "fiction" *Mullane* warned against: notice that exists in theory but is not reasonably calculated to reach the person whose property will be irrevocably taken. *Mullane,* 339 U.S. at 320, *supra*.

## 2. *Knick* Was Misapplied to Foreclose Equitable Relief And to Dilute Independent Due-Process Protections.

The panel held that Plaintiffs failed to show irreparable harm because "[a]t issue in this case is only money," and because owners have "some way to obtain compensation after the fact." *Opinion*, at 3 (quoting *Knick v. Twp. of Scott*, 588 U.S. 180 (2019 But *Knick* addressed when a takings claim accrues and whether federal courts may require exhaustion of state compensation procedures. Implicit in the Court's analysis in *Knick* is that the government action at issue was a traditional Fifth Amendment taking. There is nothing in *Knick* to indicate it is applicable to private takings.

Neither did *Knick* authorize States to extinguish title to private property through escheatment without constitutionally adequate procedures. Nor did it collapse procedural due process into an after-the-fact compensation remedy. The Supreme Court has repeatedly treated notice and the opportunity to be heard as independent constitutional guarantees. *Conn. v. Doehr*, 501 U.S. 1, 12 (1991) (holding that any impairment to property rights are sufficient to merit due process protection.").

4

Because the panel decision conflicts with controlling Supreme Court notice jurisprudence and misapplies *Knick* full Court review is appropriate.

### C.      EXCEPTIONAL IMPORTANCE

This proceeding also presents questions of exceptional importance because Ohio's regime effects (and will continue to effect) transfer of private property to fund private endeavors. And it does so under a notice model that predictably fails to inform property owners that their assets are in peril. Further, this transfer of unclaimed property to fund private enterprises affect not only Ohioans, but thousands of people whose property is held by the State, both nationally and internationally.

The record shows that the State will transfer roughly $1.7–$1.9 billion out of the UFTF based solely on the passage of time, and that once those funds are wired out, the Division will have "no control" and the funds are "gone from the trust." R. 45, Hearing Transcript 15, PageID #496 (Schellhammer testifying that once funds are transferred to OBM/Key Bank, they are "gone from the trust" and the Division has "no control" to reclaim them). Of those funds, $600 million is earmarked for the "transformational major sports facility" project for the Cleveland Browns, a project the parties and court acknowledged is a major professional football stadium development. The State is, in essence, converting its unclaimed funds program into a private development slush fund.

5

The importance of these questions cannot be overstated. If publication and passive website availability can substitute for individualized, pre-deprivation notice of a final title-extinguishing event then States across the Circuit can replicate this "lucrative silence" model to generate revenue from custodial property without ever giving constitutionally meaningful notice. *Cerajeski v. Zoeller*, 735 F.3d 577, 583 (7th Cir. 2013).

## **ARGUMENT**

Appellants filed this suit to challenge implementation of Ohio's H.B. 96, which seeks to seize certain unclaimed funds held by the State and use them, in part, specifically for construction of a private NFL stadium. Appellants' complaint approached the issue from two directions: (1) as a taking for a private use, as opposed to a public use, and (2) as a non-taking seizure of private property, i.e. an escheatment, by the State without providing due process of law. The panel, however, viewed the case purely as a public use takings claim, even when acknowledging that H.B. 96 established an escheatment process. *Opinion*, p. 4.

Although a taking for public purpose and an escheatment might appear the same in their effect, they are the exercise of different governmental powers. And their validity must be analyzed under different standards. The government might get the property either way, but the steps it must go through are different for the two paths.

6

Further, the Court equated "actual notice" of the State's custody of unclaimed property with notice of impending escheatment. But mere custody is not the same as a permanent divestiture of ownership. The difference between knowing the State is holding funds and being informed of a fixed deadline for permanent escheatment is significant. The former does not necessarily or naturally lead to the latter.

I.    **THE PANEL'S DECISION MISCHARACTERIZES THE INJURY AS "ONLY MONEY" AND IGNORES THE IRREPARABLE CONSTITUTIONAL HARM**

The Court's dispositive premise that "[a]t issue in this case is only money," mischaracterizes both the injury asserted and the relief sought. Perhaps from the traditional takings perspective the case could be viewed as being solely about money. But, from either the private use taking perspective or the escheatment perspective, compensation cannot remedy the wrongs being worked. Private takings are always unconstitutional, and escheatment always requires full due process protections.

This distinction matters because the Court used the "only money" characterization to end the analysis at irreparable harm and affirm. In the context of a traditional taking, this treatment can perhaps be understood. But Appellants' evidence and briefing framed the irreparable harm as (1) imminent divestment of title by operation of law, i.e. the escheatment, and (2) the concomitant deprivation of due-process protections that must occur "at a meaningful time," i.e., before the

7

deprivation can be prevented. *Fuentes v. Shevin*, 407 U.S. 67, 80-82 (1972) ("*Fuentes*") (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). And when such constitutional rights are threatened or impaired, irreparable injury is presumed—particularly where the challenged state action is imminent. *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012).

The panel's reliance on the existence of a later "money judgment" is misguided. There is no constitutional right to compensation for a non-taking deprivation of property. And even if there were, "no post-deprivation process nor even a 'damage award can undo the fact that the arbitrary taking that was subject to the right of procedural due process has already occurred.'" *Fuentes*, 407 U.S. at 82, *supra*. By collapsing this constitutional injury into "only money," the panel misapplied the irreparable-harm inquiry. *Id* at 80–82; *Mullane*, 339 U.S. at 313, *supra*.

Rehearing is warranted because the panel's "only money" premise drove the outcome. The threatened injury is the imminent, irreversible divestment of vested property rights without constitutionally adequate process—an injury that is not cured by pointing to later compensation mechanisms. *Fuentes*, 407 U.S. at 80–82, *supra*; *Mullane*, 339 U.S. at 313, *supra*.

II.   **THE COURT'S DECISION MISAPPREHENDS APPELLANTS' DUE-PROCESS THEORY BY EQUATING "NOTICE OF CUSTODY" WITH CONSTITUTIONALLY ADEQUATE NOTICE OF PERMANENT ESCHEATMENT**

8

The panel held that Appellants could not show irreparable due-process harm because they "had actual notice … that the state held certain of their funds," including from their review of Ohio's unclaimed-funds website, and that this "remedied any harm" from the challenged notice provisions. *Opinion*, p. 4. But Appellants' due-process claim is not that the State failed to inform them the State held funds. Rather, the issue is that the State provides no notice that ownership will be permanently divested on a fixed statutory deadline without meaningful opportunity to be heard before that divestment. *Fuentes*, 407 U.S. at 80–82, *supra*; *Mullane*, 339 U.S. at 313–14, *supra*; *Jones*, 547 U.S. at 226, *supra*; Ohio Rev. Code § 169.08(I)(1)–(3). Such notice is required when a state seeks to escheat private property. *Standard Oil*, 341 U.S. at 433, *supra*.

The record distinguishes (1) the initial transfer of property into the custodial trust fund from (2) the later, permanent escheatment/transfer of title to the State. Appellants explained that while the notice provisions for the initial seizure were "unconstitutional," the notice provisions for the permanent escheatment were "nonexistent." Doc. 18, *Appellants' Opening Brief*, p. 17. And critically, the State's own finance manager testimony confirms that the State's unclaimed-funds website "doesn't have any mention … that on January 1st, 2026, the property transfers to the state," and that "no direct, individualized notice" would be provided prior to the

escheatment. *Id.*, at p. 18, (quoting *Transcript of Oral Argument Proceedings*, R. 45, PageID #: 490)).

Against that record, "actual notice" of custody cannot be treated as constitutionally sufficient notice of a looming title divestment. *Mullane*, 339 U.S. at 313–14, *supra*; *Jones*, 547 U.S. at 226–27, *supra*; *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 800 (1983). In the tax foreclosure setting, the Supreme Court has stated that "[a]n interested party's "knowledge of delinquency in the payment of taxes is not equivalent to notice that a tax sale is pending." *Jones*, p. 232 (quoting *Mennonite*, 462 U.S. at 800). By analogy, then, a person's knowledge that the State is in custody of his unclaimed funds is not equivalent to notice that escheatment of those funds is imminent. Yet the panel's decision held the opposite. The panel's reasoning effectively converts a "search-the-database" awareness of custody into a waiver of the State's obligation to provide notice of the impending permanent deprivation. *Jones*, 547 U.S. at 229–30, *supra*. There is nothing in the record to support this conclusion.

Because the panel's analysis rests on equating "notice that the State holds funds" with "notice that the State will permanently divest title on a date certain," it overlooks the legal and factual distinction at the heart of Appellants' due-process argument. Rehearing is warranted to correct that misapprehension and to address whether due process requires notice reasonably calculated to inform owners of the

10

impending title divestment and a hearing before it occurs. *Mullane*, 339 U.S. at 313–14, *supra*; *Jones*, 547 U.S. at 226, *supra*; *Fuentes*, 407 U.S. at 80–82, *supra*; *Tulsa Pro. Collection Servs., Inc. v. Pope*, 485 U.S. 478, 485 (1988).

Because Appellants' property is being confiscated by the State, they are entitled to all the protections afforded by the Fifth and Fourteenth Amendments.

### III.   THE PANEL DECISION ERRONEOUSLY TREATS POST-HOC "ACTUAL NOTICE" AS A SUBSTITUTE FOR THE PRE-DEPRIVATION NOTICE AND OPPORTUNITY TO BE HEARD THAT DUE PROCESS REQUIRES

The panel concluded that any due-process injury was cured because Appellants had "actual notice" (including from reviewing the State website) that the State held certain funds and this purportedly "apprised them of the pendency of the [escheatment] and afforded them an opportunity to present their objections." *Opinion*, at 4 (quoting *Keene Grp., Inc. v. City of Cincinnati, Ohio*, 998 F.3d 306, 312 (6th Cir. 2021)). This approach mistakes the due process constitutional requirement. Appellants' filings emphasized that due process requires notice *and* an opportunity to be heard "at a meaningful time and in a meaningful manner," i.e., before the deprivation can still be prevented. *Fuentes*, 407 U.S. at 80–82, *supra* (quoting *Armstrong v. Manzo*, 380 U.S. at 552, *supra*). Due process is not satisfied through half measures.

### A.   H.B. 96 Provides No Notice Prior To Permanent Deprivation Of Title.

11

The panel's reference to "actual notice" pertains only to the State's possession of the funds, i.e. the initial transfer of custody of the funds to the State. However, H.B. 96 provides Appellants with no notice of escheatment–total divestment of title to the funds. And State did not even place a warning on its "searchable website" to inform the public that monies would be permanently escheated on January 1, 2026. R. 45, *Transcript of Oral Argument Proceedings*, Testimony of Amy Schellhammer, PageID #: 489–91. Thus, Appellants' "actual notice" that the State held their funds did not include any notice, actual, implied or constructive, that those funds were subject to escheatment on January 1, 2026.

In that posture, "actual notice" after the fact—or "actual notice" of custody rather than of divestment—does not satisfy the constitutional requirement that owners receive notice of the impending deprivation in time to object or avoid it. *Fuentes*, 407 U.S. at 80–82, *supra*; *Mullane*, 339 U.S. at 313–14, *supra*; *Jones*, 547 U.S. at 226–27, *supra*; *Mennonite*, 462 U.S. at 800, *supra*.

As striking as H.B. 96's amendments to Chapter 169 are, the omissions from the amendments are even more remarkable. Prior to the H.B. 96 amendments, the notice provisions of the Unclaimed Funds Act were, at best, extremely weak and ineffective. Appellants discovered that 29,000 foreign citizens' information was falsified to addresses such as Seoul, "Ohio, 00000." *See* Hearing Transcript, R. 44, Page ID # 539 (Testimony of Jan Peters). The notice requirements of the new

12

escheatment provisions, on the other hand, are nonexistent. The thousands of entries with foreign cities (e.g., "Tokyo," "Seoul," "Munich") paired with plainly invalid address information make individualized notice both impossible and unsearchable. Hearing Transcript 59-62, R. 45, PageID #540-43 (Peters testimony). The State defended the lack of notice to property owners of permanent forfeiture by asserting before the lower court that "the passage of House Bill 96 is sufficient notice to Ohioans," and that the State is "not required to do anything more." Hearing Transcript 187-88, R. 45, PageID #668-69 (argument of Defendants' counsel).

Neither can the panel's cure-by-"actual notice" rationale be reconciled with the practical reality Appellants have documented: the administrative claims process is not guaranteed to resolve claims before the divestment deadline, and some owners face barriers (including name/reporting errors) that prevent timely recovery. (Appellants' Opening Brief at 9 (Dkt. 18, Page 18) (citing Hearing Transcript, R. 45, PageID # 487 (no guarantee claim resolved before Jan. 1)); Appellants' Opening Brief at 9 (Dkt. 18, Page 18) (citing Hearing Transcript, R. 45, PageID # 486 (backlog; can take longer than 120 days)); Appellants' Opening Brief at 9 (Dkt. 18, Page 18) (citing *Declaration of Gary Petrime*, R. 20-3, PageID # 294 (misspelling prevented recovery)). That is precisely why Appellants sought prospective relief— to prevent the constitutional violation at the moment of divestment, not to litigate about remedies after the State has already extinguished title.

13

The Franklin County Court of Common Pleas likewise recognized that the injury from an unconstitutional notice regime is not "merely money." It held that an "unconstitutional lack of notice creates a 'potential irreparable injury in the form of a violation of constitutional rights,'" and reiterated that "the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Reid v. Maxfield*, No. 25CV010760, Magistrate Decision at 36 (Franklin Cnty. Ct. Com. Pl. Mar. 9, 2026).

### B.    H.B. 96's Escheatment Scheme Does Not Provide For Any Hearing.

The panel's decision cannot be squared with this Court's decision in *Warren v. City of Athens*, 411 F.3d 697 (6th Cir. 2005 *Warren* acknowledged that due process's notice and hearing obligations are independent, that due process requires both, and upheld a permanent injunction on due process grounds even where adequate notice was present, but no hearing was provided. Id., at 709 (citing *Harris v. City of Akron*, 20 F.3d 1396, 1401 (6th Cir. 1994)) ("Generally, the process that is due before a property deprivation includes prior notice and an opportunity for a predeprivation hearing."); *see also*, *Hieber v. Oakland Cnty*.**,** 136 F.4th 308, 321 (6th Cit. 2025) (in addition to notice, due process requires "an opportunity to be heard 'at a meaningful time and in a meaningful manner' if the State seeks to deprive someone of constitutionally protected liberty or property interests."); *Standard Oil Co. v. New*

14

*Jersey*, 341 U.S. 428, 433 (1951) (due process satisfied where notice of the escheatment was given and an actual hearing held).

Rehearing is warranted because the panel's analysis treats "actual notice" as a substitute for the constitutionally required pre-deprivation notice and opportunity to be heard, overlooking Appellants' core argument that the constitutional violation occurs at the time title is extinguished without adequate process.

### IV.    THE PANEL DECISION MISAPPLIES KNICK, IMPROPERLY FORECLOSING PROSPECTIVE EQUITABLE RELIEF FOR AN IMMINENT AND ONGOING CONSTITUTIONAL VIOLATION

When the government deprives a person of a property interest outside of the traditional takings process due process rights attach. This is true even without proof of additional injury, and it cannot be nullified by pointing to a post-deprivation payment mechanism. *See Carey v. Piphus*, 435 U.S. 247, 266 (1978) ("*Carey*") ("Because the right to procedural due process is 'absolute' … the denial of procedural due process should be actionable … without proof of actual injury."). The Third Circuit's decision in *Plains All Am. Pipeline L.P. v. Cook*, 866 F.3d 534 (3d Cir. 2017) applying *Carey*, explains that to establish a procedural due process violation "all [a plaintiff] must show" is that the challenged procedure itself is constitutionally defective; "submission to a fatally biased decision making process is in itself a constitutional injury." *Plains*, 866 F.3d at 545, *supra* (quoting *Carey*,

15

435 U.S. at 266, and *United Church of Med. Ctr. v. Med. Ctr. Comm'n*, 689 F.2d 693, 701 (7th Cir. 1982)).

The panel's reasoning - treating after-the-fact reimbursement as a cure for a failure of pre-deprivation notice and lack of a hearing - conflicts with this principle and risks licensing States to eliminate constitutionally required notice whenever the State deems necessary. But this is not permitted. Any governmental action - "means as well as ends" - must be "consist[ent] with the letter and spirit of the constitution." *Horne v. Dep't of Agric.*, 576 U.S. 351, 362 (2015) (quoting *McCulloch v. Maryland,* 17 U.S. 316 (1819)).

The Court viewed the case through the prism of a Fifth Amendment taking and applied *Knick* without question. *Opinion*, p. 3. However, *Knick*'s analysis involved a public-purpose taking for which compensation is due under the Fifth and Fourteenth Amendment. There is nothing in *Knick* to indicate that its holding is applicable in other contexts.

*Knick*'s entire remedial framework presupposed a taking for a public use. *Knick*, 588 U.S. at p. 191. *Knick* did not involve a taking for private use. And as this Court has stated "[p]rivate use takings do not involve claims for compensation, as they 'are unconstitutional regardless of whether just compensation is paid.' " *Warren*, 411 F.3d at 705 (citing *Montgomery v. Carter County*, 226 F.3d 758, 766 (6th Cir. 2000)).

16

H.B. 96's escheatment process is not Fifth Amendment taking. There is no constitutional right to compensation for escheated property. The governmental action here is akin to that before the Court in *Warren* - interference with the right to own, use, and enjoy private property. And in such instances, the complete panoply of due process safeguards must be afforded the property owner. *Carey,* 435 U.S. at p. 266.

## **CONCLUSION**

Panel rehearing is warranted. Proper disposition of the matter rests on points of law and fact the panel overlooked or misapprehended. The *Opinion*'s "only money" premise and its "actual notice" cure rationale grossly oversimplified the case and led the Court's analysis astray. Appellants do not seek rehearing to reargue the appeal; they seek rehearing to correct the panel's misunderstanding of the issues and facts presented.

In the alternative, Appellants request rehearing en banc to secure uniformity in the Court's decisions concerning equitable relief to prevent imminent constitutional violations and to address questions of exceptional importance arising from Ohio's notice-free, rolling divestment of private property interests.

Appellants further request that the Court stay issuance of the mandate pending disposition of this Petition.

17

Respectfully submitted,

*/s/ Marc E. Dann*
Marc E. Dann (0039425)
Jeffrey A. Crossman (0073461)
Andrew M. Engel (0047371)
Brian Flick (0081605)
DANNLAW
15000 Madison Avenue
Lakewood, Ohio 44107
Tel: (216) 373-0539
Fax: (216) 373-0536 Notices@dannlaw.com
jcrossman@dannlaw.com
aengel@dannlaw.com
bflick@dannlaw.com
mdann@dannlaw.com

William W. Palmer
PALMER LAW GROUP, A PLC
907 Westwood Boulevard, No. 218
Los Angeles, California 90024
Tel: (310) 984-5074
Fax: (310) 491-0919
wpalmer@palmercorp.com

*Counsel for Plaintiffs Mary Bleick, Todd*
*Butler, Allen Skierski, and Gary Petrime*

18

## CERTIFICATE OF COMPLIANCE

I certify that:

_____x_____ 1.  The attached brief is: Proportionately spaced, has a typeface of 14 points or more, and contains 3,887 words;

**or is**

_____    2.  Monospaced has 12 or fewer characters per inch.

Dated this 25th day of March 2026.

/s/ Marc E. Dann
Marc E. Dann

Counsel for Plaintiffs Mary Bleick, Todd Butler, Allen Skierski, and Gary Petrime

19

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of **Appellants' Petition For Rehearing And Rehearing En Banc** was made on the below counsel of record via electronic mail by service of CM/ECF on March 25, 2026:


Aneca E Lasley, Esq.
Andrea Elizabeth Howell, Esq.
Ice Miller LLP
250 West Street, Suite 700
Columbus, OH 43215-7509
Email: Aneca.Lasley@icemiller.com
Email: andrea.howell@icemiller.com

Joshua A. Klarfeld, Esq.
Ice Miller LLP
600 Superior Ave., East; Suite 1300
Cleveland, OH 44114
Email: joshua.klarfeld@icemiller.com


*/s/ Marc E. Dann*
  Marc E. Dann

*Counsel for Plaintiffs Mary Bleick, Todd Butler, Allen Skierski, and Gary Petrime*

20

# EXHIBIT 1

Opinion and Judgment
March 10, 2026

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 25-3978

MARY BLEICK; TODD BUTLER; ALLEN SKIERSKI;
GARY PETRIME,

      Plaintiffs - Appellants,

      v.

SHERYL   MAXFIELD;   AKIL   HARDY;   ROBERT
SPRAGUE; JOY BLEDSOE,

      Defendants - Appellees.

<div style="border:1px solid black; padding:10px; text-align:center;">

**FILED**
Mar 10, 2026
KELLY L. STEPHENS, Clerk

</div>

Before:  BOGGS, SILER, and KETHLEDGE, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Southern District of Ohio at Columbus.

THIS CAUSE was heard on the record from the district court and was submitted on the briefs without oral argument.

IN CONSIDERATION THEREOF, it is ORDERED that the judgment of the district court is AFFIRMED.

**ENTERED BY ORDER OF THE COURT**

*Kelly L. Stephens*

_____

Kelly L. Stephens, Clerk

RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 26a0075p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

MARY BLEICK; TODD BUTLER; ALLEN SKIERSKI; GARY PETRIME,

                    *Plaintiffs-Appellants,*

     *v.*

SHERYL MAXFIELD; AKIL HARDY; ROBERT SPRAGUE; JOY BLEDSOE,

                    *Defendants-Appellees.*

No. 25-3978

———————————

Appeal from the United States District Court for the Southern District of Ohio at Columbus.
No. 2:25-cv-01140—Edmund A. Sargus, Jr., District Judge.

Argued:  Decided and Filed:  March 10, 2026

Before:  BOGGS, SILER, and KETHLEDGE, Circuit Judges.

———————————

## COUNSEL

**ON BRIEF:**  William W. Palmer, PALMER LAW GROUP, PLC, Los Angeles, California, Jeffrey A. Crossman, Marc E. Dann, DANNLAW, Lakewood, Ohio, for Appellants.  Aneca E. Lasley, ICE MILLER LLP, Columbus, Ohio, Joshua A. Klarfeld, ICE MILLER LLP, Cleveland, Ohio, for Appellees.

———————————

## OPINION

———————————

KETHLEDGE, Circuit Judge.  Plaintiffs Mary Bleick, Todd Butler, Allen Skierski, and Gary Petrime appeal the district court's denial of a preliminary injunction to prevent the transfer of ownership of funds from Ohio's Unclaimed Funds Trust Fund to the state itself.  We reject their arguments and affirm.

No. 25-3978                              *Bleick, et al. v. Maxfield, et al.*                              Page 2

Ohio's Unclaimed Funds Act requires entities holding certain funds—including bank accounts, certificates of deposit, insurance proceeds, dividends, rent deposits, and other accounts—to deposit the funds into Ohio's Unclaimed Funds Trust Fund if the funds have been "unclaimed" for a prescribed period, typically five years.  Ohio Rev. Code §§ 169.02, 169.05. Entities holding such funds ("holders") must report them to Ohio's Division of Unclaimed Funds each year.  *Id.* § 169.03.  If the funds total $50 or more, holders must notify their last known owner that "the funds will, thirty days after the mailing of the notice, be reported as unclaimed funds."  *Id.* § 169.03(E).

Each year, the Director of Commerce publishes an annual notice of unclaimed funds in all 88 Ohio counties, listing the names and last known addresses of the owners of unclaimed funds.  *Id.* § 169.06(A), (B).  The Director also posts notice to that effect on the Division's website.  *Id.* § 169.06(D); *see* https://unclaimedfunds.ohio.gov/.

In June 2025, Governor Mike DeWine signed Ohio's House Bill 96, which amended the Act to provide that funds held in the Trust Fund for ten years or more shall escheat to the state. *Id.* § 169.08(I).  Funds deposited in the Trust Fund before January 1, 2016, would escheat on January 1, 2026; funds deposited in the Fund after January 1, 2016, would escheat ten years after deposit.  Even after funds escheat, however, owners have another ten years to "file a claim for payment of an equivalent amount" of the escheated funds, "together with interest earned by the state . . . less any expenses and costs incurred by the state in securing full title and ownership of the unclaimed funds."  *Id.* § 169.08(I)(3)(b).  Thus, owners of funds that escheated on January 1 of this year can seek recovery of those funds "at any time on or before January 1, 2036."  *Id.*

The plaintiffs allege that they own funds that were subject to escheatment on January 1 of this year.  In October 2025, they sued several Ohio officials charged with implementing this regime, claiming that the regime violates the Takings Clause of the Fifth Amendment, the Due Process Clause of the Fourteenth Amendment, and various Ohio laws.  The plaintiffs also moved for a preliminary injunction to prevent the escheatment of their funds, arguing that the Act provides them insufficient notice before their property escheats. (Why the plaintiffs did not simply claim their funds by the means provided in the statute, *see id.*, the complaint does not say.)  The district court denied relief, holding that the plaintiffs had not shown any irreparable

No. 25-3978                    *Bleick, et al. v. Maxfield, et al.*                    Page 3

harm from the escheatment of their funds.

We review the court's denial of injunctive relief for an abuse of discretion. *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 540-41 (6th Cir. 2007). Courts may grant a preliminary injunction "only if the plaintiffs present 'a clear showing' that they are likely to prevail on the merits, that they face irreparable harm without an injunction, that the balance of equities favors them, and that the public interest supports an injunction." *L. W. by & through Williams v. Skrmetti*, 83 F.4th 460, 471 (6th Cir. 2023).

We begin and end with the absence of any irreparable harm. At issue in this case is only money. The effect of escheatment is to transfer "[a]ll property rights, legal title to, and ownership of" the monies at issue to the state itself. Ohio Rev. Code § 169.08(I)(3)(a). The plaintiffs have fully ten years to claim their funds (with interest, but less expenses) from the state. *Id.* § 169.08(I)(3)(b). The plaintiffs have barely attempted to show that they cannot recover their monies by that means, offering little more than bare assertions that the state "refus[ed] to reconcile obvious clerical errors in the holder's report." R. 20-3, PageID 296. Nor have they shown that—if they were to prevail on the merits of their takings claim (or due-process claim, for that matter), and to sue an appropriate defendant—they could not obtain a money judgment to make them whole. Thus, the plaintiffs have ways other than injunctive relief to obtain the compensation they seek here. And the Supreme Court has made clear that, "[s]o long as the property owner has some way to obtain compensation after the fact, governments need not fear that courts will enjoin their activities." *Knick v. Twp. of Scott*, 588 U.S. 180, 185 (2019).

The plaintiffs counter that—under *Cedar Point Nursery v. Hassid*, 594 U.S. 139 (2021)— injunctive relief (in the plaintiffs' words) "is available to prevent a future *per se* taking." Br. at 13. But in *Cedar Point*, the Court held only that the defendants had effected a taking, not that the plaintiffs were entitled to a particular remedy. *See id.* at 162; and *id.* at 179 (Breyer, J., dissenting) ("I touch briefly on remedies, which the majority does not address"). Meanwhile, the harm in *Cedar Point*—a physical trespass upon the plaintiffs' facility, in violation of their "right to exclude"—is patently harder to remedy, post hoc, than is a wrongful transfer of money.

The plaintiffs have made no showing whatever that a preliminary injunction, during the

pendency of this suit, is necessary to make them whole in the event they ultimately prevail on the merits of their takings claim. In this case, rather, the Supreme Court's holding in *Knick* applies by its plain terms.

Nor can the plaintiffs show irreparable harm from the state's alleged violations of their due-process rights. The plaintiffs contend the Act provides insufficient notice to property owners that their funds are subject to escheatment. But they had actual notice, including from their own review of Ohio's unclaimed-funds website, that the state held certain of their funds. This apprised them of "the pendency of the [escheatment] and afford[ed] them an opportunity to present their objections," which remedied any harm from the Act's allegedly unlawful notice provisions. *Keene Grp., Inc. v. City of Cincinnati, Ohio*, 998 F.3d 306, 312 (6th Cir. 2021). The plaintiffs gesture toward "other property in Ohio that is subject to turnover and/or seizure under Ohio's unclaimed property regime," but do not identify any such property specifically. Thus, they have not shown a "likelihood" of irreparable harm. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).

The district court's December 9, 2025 Order is affirmed.